MICHAEL ANTHONY SENO, SR. *v.* COMMISSIONER OF CORRECTION
(14196)

SHEA, CALLAHAN, GLASS, BORDEN and F.X. HENNESSY, Js.

Argued April 26—decision released June 18, 1991

*John W. Watson,* assistant public defender, for the appellant (petitioner).

*L. D. McCallum,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (respondent).

BORDEN, J. The sole issue in this appeal is whether a person sentenced to a term of imprisonment exceeding five years must be incarcerated for five calendar years in order to earn statutory good time[1] at the rate of twelve days per month pursuant to General Statutes § 18-7a (c).[2] The petitioner, Michael Anthony Seno, Sr.,

---

[1] " '[G]ood time' is a commutation of a sentence, affecting an inmate's parole and discharge dates, thereby serving an important rehabilitative function by allowing an inmate the opportunity to earn an earlier release for himself. See *McGinnis* v. *Royster,* 410 U.S. 263, 271, 35 L. Ed. 2d 282, 93 S. Ct. 1055 [1973]." *Holmquist* v. *Manson,* 168 Conn. 389, 394, 362 A.2d 971 (1975).

[2] General Statutes § 18-7a provides: "(a) Except as provided in subsections (b) and (c) any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee.

"(b) Except as provided in subsection (c), any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may,

appeals from the judgment of the trial court dismissing his petition for a writ of habeas corpus. The petitioner claims that the trial court should have determined that the respondent, the commissioner of correction, failed to calculate properly the amount of statutory good time that the petitioner has earned and, therefore, should have granted his petition. We agree and, accordingly, we reverse the judgment of the trial court.

The material facts are not in dispute. Following his conviction of multiple offenses[3] that had occurred after July 1, 1983, the petitioner received an effective sentence of twelve years imprisonment and was committed

while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee.

"(c) Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

[3] The petitioner was convicted of nine counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), five counts of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) and one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B).

to the custody of the respondent. During the first five years of the petitioner's confinement, the respondent calculated the statutory good time that he had earned at a rate of ten days per month. Thereafter, the respondent calculated the petitioner's statutory good time at the rate of twelve days per month.[4]

The petitioner filed this petition for a writ of habeas corpus in the Superior Court, claiming that, pursuant to § 18-7a (c), the respondent should have calculated the petitioner's statutory good time at the rate of twelve days per month when his confinement time and credit time from all sources totaled five years.[5] The court dismissed the petition, concluding that, under § 18-7a (c), only confinement time and credit time for presentence confinement; General Statutes § 18-98d (a);[6] are properly considered in determining when the enhanced rate of statutory good time commences.

[4] By adding five years to the day that the petitioner's sentence had commenced and then subtracting 197 days, the time that the petitioner had spent in presentence confinement, the respondent determined that on October 13, 1988, the petitioner had been incarcerated for five years. Accordingly, the respondent began calculating the petitioner's statutory good time at the enhanced rate on the following month.

[5] On or about March 17, 1987, the petitioner had been confined for 1056 days and had received 197 days of credit time for presentence confinement. General Statutes § 18-98d (a). In addition, the petitioner had earned sixty-three days of presentence statutory good time; General Statutes § 18-98d (b); 346 days of statutory good time; General Statutes § 18-7a (c); sixty days of outstandingly meritorious good time; General Statutes § 18-98b; and 103 days of credit time for employment. General Statutes § 18-98a. Thus, on or about March 17, 1987, the petitioner's confinement time and credit time from all sources totaled 1825 days, or five years.

[6] General Statutes § 18-98d (a) provides in pertinent part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed . . . ."

On the granting of certification, the petitioner appealed to the Appellate Court. We thereafter transferred the appeal to this court pursuant to Practice Book § 4023.

The petitioner claims that the habeas court improperly rejected his claim that, pursuant to § 18-7a (c), the respondent should have calculated his statutory good time at the rate of twelve days per month once the total of his confinement time and credit time from all sources equalled five years and, therefore, wrongfully dismissed his petition for a writ of habeas corpus. The respondent counters that the habeas court correctly determined that, pursuant to § 18-7a (c), the petitioner actually was required to spend five years in confinement in order to earn statutory good time at the enhanced rate and, therefore, properly denied the petition. We agree with the petitioner in part.

General Statutes § 18-7a (c) provides in pertinent part: "Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years." Both the petitioner and the respondent assert that the plain language of § 18-7a (c) supports their opposing positions. The petitioner argues that the phrases "of a sentence up to five years" and "for the sixth and each subsequent year of a sentence which is more than five years" require that a prisoner serving a sentence in excess of five years imprisonment

receive statutory good time at the rate of twelve days per month when his confinement time and credit time from all sources equals five years. The petitioner contends that to apply the section otherwise renders the phrase "of a sentence" superfluous. The respondent argues that because § 18-7a (c) provides that statutory good time is earned "as such sentence is served" and because, logically, "the sixth . . . year of a sentence" cannot commence until a prisoner has been confined for five calendar years, a prisoner can earn statutory good time at the rate of twelve days per month only after five years of incarceration.

Contrary to the parties, we believe that the language of § 18-7a (c), on its face, is insufficient to resolve the issue presented. Although we have stated that § 18-7a (c) is unambiguous in other contexts; see *Nichols* v. *Warren,* 209 Conn. 191, 198, 550 A.2d 309 (1988); *Murray* v. *Lopes,* 205 Conn. 27, 33, 529 A.2d 1302 (1987); we there considered language of the provision and issues distinct from those involved in the present case. See *Nichols* v. *Warren,* supra, 197 (whether provision subjecting prisoner to the loss of "all or any portion of such [sentence] reduction" as a result of misconduct authorizes prospective forfeiture of statutory good time); *Murray* v. *Lopes,* supra, 33–34 (whether confinement at Whiting Forensic Institute constitutes "imprisonment" within the meaning of § 18-7a [c]). Under the circumstances of this case, therefore, § 18-7a (c) requires our construction.

Prior to July 1, 1983, statutory good time was calculated pursuant to General Statutes (Rev. to 1983) § 18-7a, which provided in pertinent part: "(a) Except as provided in subsection (b) any person sentenced to a term of imprisonment, on and after October 1, 1976 . . . may, by good conduct and obedience to the rules which have been established for the service of his sen-

tence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the sixth and each subsequent year of a sentence of more than five years. . . .

"(b) Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may . . . by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years."

Pursuant to General Statutes (Rev. to 1983) § 18-7a, for purposes of administrative efficiency statutory good time was calculated and credited at the outset of a prisoner's sentence on the basis of the sentence imposed by the sentencing court.[7] See *Nichols* v. *Warren,* supra, 199. This method of awarding good time is commonly referred to as "posting." Id. For example, when a prisoner sentenced to seven years imprisonment for an offense committed prior to July 1, 1983, was committed to the custody of the respondent, his statutory good time was calculated as follows: for the first sixty months he received ten days per month for a total of 600 days; for the remaining twenty-four months he received twelve days per month for a total of 288 days. Thus, a total of 888 days of statutory good time was credited to his sentence. If the prisoner there-

---

[7] If a prisoner engaged in misconduct, a portion of the good time was rescinded. *Nichols* v. *Warren,* 209 Conn. 191, 199, 550 A.2d 309 (1988).

after exhibited good conduct and obedience to the rules, he was released from custody after 54.4 months of confinement. The Prison and Jail Overcrowding Commission, "Prison and Jail Overcrowding: A Report to the Governor and Legislature," January, 1983, p. 70.

Consequently, although the prisoner had been confined for less than five years, because the sentence imposed immediately determined the time at which the enhanced rate of statutory good time began, he had received statutory good time at the rate of twelve days per month for a portion of his sentence. Essentially, the enhanced rate of statutory good time had commenced when his confinement time, approximately forty months, and statutory good time, twenty months, totaled five years. Under General Statutes (Rev. to 1983) § 18-7a, therefore, the phrases, "of his sentence" and "of a sentence," referred not to the actual time served in incarceration, but to the sentence as imposed by the court, and included the applicable credit for statutory good time.

In July, 1983, pursuant to Public Acts 1982, No. 82-379, § 18-7a was revised to include subsection (c). Thereafter, prisoners sentenced to a term of imprisonment on or after October 1, 1976, for an offense committed prior to July 1, 1981, received statutory good time according to § 18-7a (a); prisoners sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, but before July 1, 1983, received statutory good time according to § 18-7a (b); and prisoners sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, as was the petitioner in this case, received statutory good time pursuant to § 18-7a (c).

Public Acts 1982, No. 82-379 did not change the substance of General Statutes (Rev. to 1983) § 18-7a (a)

and (b). See General Statutes (Rev. to 1991) § 18-7a (a) and (b); compare General Statutes (Rev. to 1983) § 18-7a. The respondent does not dispute, therefore, that at present pursuant to § 18-7a (a) and (b) prisoners sentenced to a term of imprisonment for an offense committed before July 1, 1983, receive statutory good time according to the posting method. Thus, the respondent necessarily concedes that had the petitioner been sentenced for an offense committed before July 1, 1983, he would have earned statutory good time at the rate of twelve days per month once his confinement time and statutory good time totaled five years. We must determine, therefore, whether the revision of § 18-7a, adopting subsection (c), was intended to alter the time at which the enhanced rate of statutory good time commences.

The legislative history of Public Acts 1982, No. 82-379 demonstrates that the act was designed to attain two related objectives. First, the legislature sought to return to the original concept behind good time, that is, the concept of reward for good behavior. Senator Nancy L. Johnson defined this objective, stating: "All this bill really does is to return the initial concept of good time which was a concept of reward. A reward for good behavior. When you deduct the entire amount at the front end of the sentence, then what you revert to is the system of punishment for poor behavior. So that instead of granting good time you actually end up earning penalties for poor behavior. . . . All it means is that the reward will not be front-ended. The reward must be earned and, indeed, good time will reduce the sentence, essentially the sentence that is there now, the kind of sentence that is being given now. . . . The importance of this bill is that it returns to the original sound concept of good time which is a concept of reward for good behavior rather than a concept of punishment for failure to provide good behavior." 25 S. Proc., Pt. 12, 1982 Sess., pp. 3826–27.

The legislature's second objective was to eradicate an irrational consequence of the posting system. Because, under the posting system, good time is credited at the outset of a sentence, some prisoners receive good time for time that they, in fact, never serve. As Representative Christopher Shays explained: "We compute good time [under § 18-7a (a)] saying the person is going to serve the whole 10 years, so he earns 5 years based on 10 days a month and then he has 5 years based on 15 days a month, assuming that he is in jail for the whole ten years. . . . And so what you end up with is a sentence where an individual gets out before he even serves the full sentence earning the good time." 25 H.R. Proc., Pt. 11, 1982 Sess., p. 3551. For example, pursuant to the posting method, a prisoner sentenced to a term of seven years imprisonment is awarded good time for eighty-four months of service. If the prisoner exhibits good conduct and obedience and, therefore, retains the good time, he will serve 54.4 months. The Prison and Jail Overcrowding Commission, "Prison and Jail Overcrowding: A Report to the Governor and Legislature," January, 1983, p. 70. Consequently, the prisoner receives good time for 29.6 months of time that he never serves.

As the following remarks demonstrate, the predominant purpose of § 18-7a (c) was to eliminate the possibility of prisoners earning good time for time that is never served. As Representative John Wayne Fox observed: "Mr. Speaker, I think it's important before we vote on this issue that we understand completely what's involved and that the issue not be muddied by extraneous information. The issue I submit is a very simple one. It's an issue of public policy. We have a concept which we call good time. That is to provide an individual with credit for behaving himself or herself while serving a sentence imposed by our courts. The question is whether or not that individual should receive

credit for that time before that individual ever steps into a jail. As the statute is presently interpreted, one receives that credit at the time the sentence is imposed and prior to ever serving any time. This bill as amended would provide that one would receive the credit for good time as one earns it." 25 H.R. Proc., Pt. 11, 1982 Sess., pp. 3555–56. Representative Edward C. Krawiecki, Jr., concurred in this characterization, explaining: "This is a narrow issue, whether or not we believe someone who has been sentenced to serve a fixed period of time in prison should serve that time and earn good time, not be awarded good time before he walks in the door and serves even one minute of time." Id., p. 3545. He further stated: "The issue at stake is whether you believe that people when sentenced to serve time, must earn what is commonly called good time. That is all this bill does. The other issues will be dealt with as we go by. And if you do not believe that someone who is sentenced to serve a fixed period of time does not have to serve it in order to get out a little earlier, then you probably will be voting no on this bill. But that is what the issue is. It is nothing else." Id., pp. 3560–61.

Elimination of the posting system and adoption of a system that awards statutory good time on a monthly basis was an effective means by which the legislature accomplished its dual objectives. Senator Howard T. Owens, Jr., clarified the means chosen, stating: "The Correction Department presently computes good time at the beginning of the prison term based upon the length of the sentence imposed. This bill would require that [for] persons sentenced for offenses committed on or after July one . . . the good time credit be computed according to time actually served rather than on the sentence imposed. This method of computing good time would result in a longer confinement. Obviously, the intent of this legislation would be that in the event anyone who is sentenced after July one that the ten days or the twelve days respectively, whatever the case

may be, credit would actually be imposed on the time actually served rather than on the sentence imposed . . . ." 25 S. Proc., Pt. 12, 1982 Sess., pp. 3821–22.[8]

A comparison of the language of § 18-7a (b) and (c) reveals how the new methodology was established. Section 18-7a (b) provides in pertinent part: "[A]ny person . . . may . . . earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years." Section 18-7a (c) provides in pertinent part: "Any person . . . may . . . earn a reduction of his sentence *as such sentence is served* in the amount of ten days for each month *served* and pro rata for a part of a month *served* of a sentence up to five years, and twelve days for each month *served* and pro rata for a part of a month *served* for the sixth and each subsequent year of a sentence which is more than five years." (Emphasis added.) Thus, by adding the phrase "as such sentence is served" and the word "served" to language virtually identical to § 18-7a (b), the legislature dispensed with the posting method and adopted, in its place, a system of calculating statutory good time on a monthly basis.

Although § 18-7a (c) was designed to alter the time at which statutory good time is awarded, and to change from the posting method to a system of good time

---

[8] We recognize that some of the language of Senator Howard T. Owens, Jr.'s remarks may support the respondent's reading of General Statutes § 18-7a (c), namely, that regarding "the ten days or the twelve days respectively, whatever the case may be, credit would actually be imposed on the time actually served rather than on the sentence imposed . . . ." 25 S. Proc., Pt. 12, 1982 Sess., p. 3822. Taken in the context of the other legislative history, however, suggesting more limited purposes of the act, and taken in the context of the language of the act itself, discussed in the text, we cannot ascribe to those remarks a conclusive effect in support of the respondent's position.

earned monthly, the legislative history does not indicate that the legislature also intended to change the practice of determining the time at which the enhanced rate of good time commences on the basis of the sentence imposed. Nor does the language reveal any such intention. The only substantial difference between the pertinent language of § 18-7a (b) and (c) is the phrase "as such sentence is served" and the word "served" which, as previously explained, altered the time at which statutory good time is awarded. Otherwise, the relevant language is substantially unchanged. " 'In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language.' *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 667, 103 A.2d 535 (1954)." *McCarthy* v. *Commissioner of Correction,* 217 Conn. 568, 578, 587 A.2d 116 (1991).

Furthermore, the respondent's argument would require that the phrases, "of his sentence" and "of a sentence," have different meanings in subsections (a) and (b) of § 18-7a and in subsection (c) of the same section. It is clear, as the respondent concedes, that those phrases as used in § 18-7a (a) and (b) refer to the sentence as imposed by the court, reduced by the applicable good time. When the legislature used the same phrases in § 18-7a (c), it must be regarded as having intended the same meaning. *Gurliacci* v. *Mayer,* 218 Conn. 531, 551, 590 A.2d 914 (1991). Thus, when the legislature referred in § 18-7a (c) to "twelve days for each month served . . . for the sixth and each subsequent year *of a sentence which is more than five years*"; (emphasis added); it must be regarded as intending that language to have the same meaning as it has in § 18-7a (a) and (b).

Finally, the respondent's interpretation of § 18-7a (c) leads to an irrational result. If we were to interpret § 18-7a (c) as imposing a new requirement of five years

of actual incarceration in order to earn statutory good time at the rate of twelve days per month, model prisoners would not have the ability to earn the enhanced rate of statutory good time earlier than prisoners who have failed to exhibit good conduct and obedience to the rules. In addition to effecting a change in established practice, therefore, the incentive for prisoners to behave obediently would be decreased, thereby undercutting the rehabilitative function served by good time. See *McCarthy* v. *Commissioner,* supra, 569; *Holmquist* v. *Manson,* 168 Conn. 389, 394, 362 A.2d 971 (1975). " '[W]here a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to "bizarre results" destructive of that purpose, the former should prevail.' *State* v. *Williams,* 206 Conn. 203, 210, 536 A.2d 583 (1988)." *State* v. *Uretek, Inc.,* 207 Conn. 706, 719, 543 A.2d 709 (1988).

In light of its language and legislative history, we conclude that § 18-7a (c) requires that the respondent calculate a prisoner's sentence at the rate of twelve days per month once his confinement time and statutory good time total five years. We conclude, therefore, that the habeas court should have determined that the respondent failed to calculate and credit properly the statutory good time earned by the petitioner and should have granted his petition for a writ of habeas corpus.

Our conclusion sustains the petitioner's claim only in part. Whereas we conclude that the respondent must calculate a prisoner's statutory good time at the rate of twelve days per month once his confinement time and *statutory good time* total five years, the petitioner claims that the enhanced rate commences when a prisoner's confinement time and credit time *from all sources* total five years. Thus, the petitioner argues that in addition to his statutory good time; General Stat-

utes §§ 18-7a (c), 18-98d (b);[9] the respondent should have considered his credit time for employment; General Statutues § 18-98a;[10] and outstandingly meritorious good time; General Statutes § 18-98b;[11] in determining when the petitioner had served five years of his sentence within the meaning of § 18-7a (c) and was therefore entitled to earn statutory good time at the enhanced rate of twelve days per month. See footnote 5, supra. We decline to address this aspect of the petitioner's claim.

[9] General Statutes § 18-98d (b) provides: "In addition to any reduction allowed under subsection (a), if [any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail] obeys the rules of the facility he may receive a good conduct reduction of any portion of a fine not remitted or a sentence not suspended at the rate of ten days or one hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against him may not be counted more than once in computing a good conduct reduction under this subsection."

[10] General Statutes § 18-98a provides: "Each person committed to the custody of the commissioner of correction who is employed within the institution to which he was sentenced, or outside as provided by section 18-100, for a period of seven consecutive days, except for temporary interruption of such period as excused by the commissioner for valid reasons, may have one day deducted from his sentence for such period, in addition to any other earned time, at the discretion of the commissioner of correction."

[11] General Statutes § 18-98b provides: "In addition to any commutation or diminution of [a] sentence or any meritorious time service award which may have been granted under section 18-7 or 18-53 any inmate committed to the custody of the commissioner of correction for a definite term, or for a term with a minimum sentence imposed, may have not more than one hundred and twenty days deducted from any one continuous term of imprisonment as an outstandingly meritorious performance award in the discretion of the commissioner of correction for exceptional personal achievement, accomplishment and other outstandingly meritorious performance, provided any serious act of misconduct or insubordination or refusal to conform to institution regulations occurring at any time during his confinement shall subject the prisoner, at the discretion of the warden and the commissioner, to the loss of all, or any portion, of any time awarded under this section. When any prisoner is held under more than one conviction the several terms of imprisonment imposed thereunder shall be construed as one continuous term for purposes of determining eligibility for any outstandingly meritorious performance award authorized by this section."

The language and legislative history of § 18-7a (c) only support the conclusion that the respondent must consider statutory good time along with confinement time in determining when a prisoner is entitled to earn statutory good time at the enhanced rate. These sources are uninstructive with respect to the issue of whether other forms of credit time must be considered. Furthermore, despite the petitioner's use of the phrase "credit time from all sources" in characterizing his claim, the parties did not address the question of whether forms of credit time other than statutory good time must be included in the respondent's calculation under § 18-7a (c) in either their briefs or at oral argument. We therefore defer consideration of the question of whether credit time from employment and outstandingly meritorious good time must be considered in determining when a prisoner is entitled to earn statutory good time at the rate of twelve days per month.[12]

The judgment is reversed and the case is remanded with direction to render judgment for the petitioner and for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[12] The petitioner contends that, as a result of the respondent's failure to calculate properly his statutory good time, he is entitled to an additional thirty-eight days of statutory good time. This thirty-eight day figure is based, however, upon the petitioner's claim that the enhanced rate commences once a prisoner's confinement time and credit time *from all sources*; see General Statutes §§ 18-7a (c), 18-98a, 18-98b, 18-98d (b); total five years. In light of our conclusion that General Statutes § 18-7a (c) requires that the respondent calculate a prisoner's statutory good time at the enhanced rate once his confinement time and *statutory good time*; General Statutes §§ 18-7a (c), 18-98d (b); total five years, we conclude that the balance of statutory good time to which the petitioner is entitled has yet to be determined. We therefore direct the habeas court on remand: (1) to determine the date upon which the petitioner's confinement time and statutory good time totaled five years; and (2) to order the respondent to credit the petitioner's sentence with an additional two days of statutory good time per month, for each month that transpired from that date until November 1, 1988, the date on which the respondent commenced calculation of the petitioner's statutory good time at the enhanced rate. See footnote 4, supra.