[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These actions are two petitions for habeas corpus relief which were heard together because similar issues were presented by some of the claims of these petitioners. The related issue deals with whether the respondent is correctly crediting the petitioners for the time they served in prison after imposition of a sentence for a conviction which was later overturned on appeal.
Petitioner Graham also asserts that the respondent has reneged on a stipulation which was entered into between himself and the respondent as a result of a previous habeas corpus petition.
Petitioner Steve has an additional claim that he is entitled to have the enhanced good conduct credit rate of General Statutes § 18-7a(c) apply earlier than the date used by the respondent because of the respondent's refusal to consider employment and outstandingly meritorious performance (OMP) credit.
The facts in these cases are undisputed. Steve was convicted, after a jury trial, on charges arising in a case denoted as docket no. CR4-118626. On December 6, 1985, he received a total, effective sentence in that case of twenty years incarceration, execution suspended after sixteen years, and five years probation. At the time he received this sentence, Steve also had two other criminal cases pending, denoted as docket nos. CR4-118627 and CR4-118628. On December 30, 1985, Steve pleaded guilty to one count in CR4-118628, for which conviction he received a sentence of ten years incarceration concurrent with the sentence in CR4-118626. The charges in CR4-118627 were nolled at that time.
Steve appealed his conviction in CR4-118626, and, on August 4, 1987, our Appellate Court reversed the conviction and remanded the case for a new trial, State v. Steve, 11 Conn. App. 699
(1987). That reversal was affirmed by our Supreme Court, State v.Steve, 208 Conn. 38 (1988). On July 21, 1988, Steve pleaded CT Page 6653 nolo contendere to the charges in CR4-118626 and was sentenced to serve a total, effective sentence of twenty years incarceration, execution suspended after ten years, and probation five years. The respondent regards the ten year unsuspended term in CR4-118626 as the controlling sentence for purposes of determining Steve's discharge date.
Graham was convicted, after a jury trial, in a case denoted as docket no. CR10-12110, and, on November 28, 1983, received a total, effective sentence of thirty years imprisonment. Graham also had three other cases pending at that time, and, on February 3, 1984, he received three concurrent, fifteen year terms in these files, denoted as docket nos. CR10-128190A, CR10-128190B, and CR10-128229. These sentences were also concurrent with the thirty year sentence in CR10-128110.
Graham appealed his conviction in CR10-128110, and, on May 27, 1986, that conviction was overturned and the case remanded for a new trial by our Supreme Court, State v. Graham,200 Conn. 9 (1986). He was again convicted after a jury trial and, on October 17, 1986, received a thirty year term, concurrent to the sentences imposed in CR10-128190A, CR10-128190B, and CR10-128229. The respondent regards the thirty year sentence in CR10-128110 as the controlling sentence in calculating Graham's discharge date.
 I.
The first count of these petitions challenges the respondent's treatment of the time the petitioners spent in custody after sentencing for the original convictions which were later overturned on appeal. The respondent has treated all the time these petitioners spent in custody on their vacated sentences between the original sentencing dates and resentencing dates as presentence
confinement. For Steve, this comprises the time he was confined on CR4-118626 from December 6, 1985 to July 21, 1988. For Graham, this comprises the time he was confined on CR10-128110 from November 28, 1983, to October 17, 1986.
Had Steve and Graham had no other sentences imposed while awaiting appeal, no controversy would arise. The characterization of this time period as presentence or postconviction time would then have made no difference. The fact of the imposition of subsequent sentences on other files, however, does create a substantial difference in outcome for these petitioners depending on whether the respondent regards the relevant interval as being CT Page 6654 presentence or postconviction confinement. This difference occurs because of the existence of General Statutes § 18-98d.
That statutory section provides that presentence jail credit only accrues if that presentence confinement is the "sole reason" for the inmates' incarceration, § 18-98d(a)(2). Because Steve and Graham were sentenced prisoners as a result of the conviction on other files, neither receives jail credit or good conduct credit on their controlling files for that portion of the time in custody after imposition of the sentences on the noncontrolling cases and before resentencing on the controlling file.
If, on the other hand, the respondent treated this time interval as postconviction confinement, these inmates would receive jail credit plus good conduct credit for the entire interval toward their controlling sentences. Thus, the characterization by the respondent of the time period between the original sentencing and the vacating of those sentences because of the successful appeals is critical.
 A.
For purposes of deciding whether the respondent is correctly characterizing the time spent in custody by these petitioners, the following five time periods must be considered:
 1. The time spent in custody on the controlling file after arrest but before the original sentence was imposed.
 2. The time spent in custody after the original sentence was imposed on the controlling file but before the concurrent sentences were imposed on the other, noncontrolling files.
 3. The time spent in custody after imposition of the concurrent sentences on the noncontrolling files but before the original sentence on the controlling file was vacated by the favorable decision on appeal.
 4. The time spent in custody on the controlling file after the appeal but before resentencing.
 5. The time spent in custody after resentencing on the controlling file. CT Page 6655
There appears to be no controversy with respect to time periods 1, 2, and 5. Steve asserts that the respondent's treatment of time periods 3 and 4 as presentence confinement violates his constitutional rights against double jeopardy and to due process of law, as well as violating his statutory rights to jail and good conduct credits under General Statutes § 53a-38(c). Graham asserts that the respondent's treatment of time period 4 as presentence confinements similarly violates his constitutional rights.
 B.
At this point a genealogy and evolution of the respondent's present position is necessary.
Section § 53a-38(c) reads as follows:
 When a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such person for the same offense or for an offense based on the same act, the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced, and all time served under or credited against the vacated sentence shall be credited against the new sentence.
Before the decision in Sutton v. Lopes, 202 Conn. 343
(1987), the respondent construed § 53a-38(c) as requiring the treatment of a new sentence, imposed after an original sentence was vacated, as if that new sentence started when the old vacated sentence was imposed. Under this interpretation, all the time in custody between the imposition of the original, vacated sentence and the successful appeal would be postconviction confinement because of the statutory fiction mandated by § 53a-38(c). In Sutton v.Lopes, supra, however, an inmate convinced the habeas court and, on appeal, our Supreme Court, that the time he spent in custody serving a sentence which was later vacated ought to be construed as presentence confinement. The inmate desired this construction because, as a product of the multiple credit rule underDelevieleuse v. Manson, 184 Conn. 434 (1981), it was greatly to his advantage to have this time considered as presentence confinement. Our Supreme Court held that § 53a-38(c) "does not bar" such treatment, Sutton v. Lopes, supra, 349. CT Page 6656
The respondent viewed the decision in Sutton v. Lopes, supra, as an anomaly and restricted its application for the benefit of the inmate in that case. In Casey v. Commissioner, 215 Conn. 695
(1990) our Supreme Court indicated, however that the holding inSutton v. Lopes, supra, treating time spent in custody serving a vacated sentence as presentence confinement, had general application, Casey v. Commissioner, supra, 700.
The respondent in Casey v. Commissioner, supra, attempted to alert the Supreme Court that its holding in Suttonv. Lopes, supra, while benefitting [benefiting] the individual inmates in those appeals, would work to the serious disadvantage of other inmates for whom multiple presentence crediting was unavailable. The respondent specifically tried to have the Supreme Court consider the situation of Graham as an example of why the holding inSutton v. Lopes, supra, ought to be abandoned or restricted. The Supreme Court rejected this attempt because it would necessitate resorting to matters "extraneous to the record," Casey v.Commissioner, supra.
Finally, in Raucci v. Warden, 30 Conn. App. 190
(1993), the Appellate Court held that the Sutton-Casey
construction regarding the time spent in custody under a vacated sentence as presentence confinement is mandatory, rather than discretionary, Id, 197. As a result, the respondent, having resisted presentence treatment of vacated sentences from the beginning feels obligated by theSutton-Casey-Raucci line of cases to treat any time served pursuant to a later-vacated sentence as presentence confinement.
If such a time interval is regarded as presentence confinement, the present petitioners can receive no credit for the time they have spent with respect to the controlling sentence after sentence was imposed on the noncontrolling cases because § 18-98d forbids awarding any credit for presentence confinement unless that presentence custody is the sole reason for confinement. Because these petitioners received subsequent, concurrent sentences arising out of unrelated, criminal charges, the time they spent in custody on the original case, after being sentenced on these other files, is "dead time" because it was not the sole reason for their confinement. Put another way, because the petitioners were serving sentences on the unrelated charges, they cannot, under § 18-98d, receive presentence jail credit on the vacated sentence. This is the respondent's present position.
C. CT Page 6657
The petitioners argue that the respondent's rigid interpretation of the time served on the vacated sentences as presentence confinement, coupled with the lack of credit by virtue of § 18-98d, constitutes a violation of their rights under the federal and state constitutional protection against double jeopardy as expressed in North Carolina v. Pearce, 395 U.S. 711,717 (1969). The court agrees in part.
Some guidance with respect to this claim may be had from the case of Wright v. Commissioner, 216 Conn. 220 (1990). In that case, the respondent also treated an inmate's service of a vacated sentence as presentence confinement. While serving this later-vacated sentence, the inmate had accumulated employment and OMP credit under General Statutes §§ 18-98a and 18-98b, respectively. Because such credits may only be earned while in a postconviction status, the respondent refused to award these credits against a new sentence imposed upon reconviction. The inmate filed a habeas corpus petition, and the habeas court ordered the respondent to reinstate the credits. On appeal our Supreme Court held that, while the respondent correctly treated the vacated sentence as presentence confinement, the failure to include the earned credits to reduce the new sentence amounted to a violation of the prohibition against double jeopardy, Id, 226.
It appears to the court that the holding in Wright v.Commissioner, supra, applies to the facts in the present cases. To conclude otherwise would be to deny credit "for punishment already exacted," Id. Had the petitioners not appealed or lost their appeals, the respondent would award full credit on the original sentences because it would be postconviction jail time. Only because the petitioners were successful in overturning their convictions is the respondent regarding the service of the vacated sentences as "dead time" under § 18-98d.
The respondent's position is unconstitutional but understandable. That position is the literal and logical consequence of the Sutton-Casey-Raucci chain of cases. It is ironic that the respondent was procedurally barred from pointing out in Casey v. Commissioner, supra, the very mischief which its position now creates for Graham. But Justice Shea's concurring opinion in Wright v. Commissioner], supra, seems to place the issue in perspective. He noted that § 53a-38(c) "plainly provides that `all time . . . credited against the vacated sentence shall be credited against the new sentence,"' Id, 222. The conclusion that these CT Page 6658 petitioners must be credited for the time they spent in custody, plus any ancillary credits earned, despite § 18-98d, is "inescapable," Id.
 D.
The court's ruling in section I.C., supra, however, applies only to that time spent in custody serving the vacated sentence. It is inapplicable to the time spent in custody after the original conviction was overturned on appeal. By its terms, § 53a-38(c) applies to "time served under or credited against the vacated
sentence" (emphasis added). The vacated sentence ceased being served once the appeal reversed the underlying conviction. After that time, the petitioners were in custody awaiting a new trial. The Sutton-Casey-Raucci principle has no bearing on postappeal time in custody. Similarly, the holding in Wright v.Commissioner, supra, appears inapposite because it addresses credits earned during the service of a later-vacated sentence.
Also, because, after the appellate decision, the petitioners were being held to face a new trial and were no longer serving the punishment of a sentence, double jeopardy analysis is irrelevant with respect to this postappeal period. Double jeopardy forbids, in this context, multiple punishments for the same offense. Because the petitioners were held in custody for the purpose of awaiting trial and not by way of the execution of a punishment, they were not subjected to multiple punishments for the same offense for the time they spent in custody awaiting a new trial. This postappeal confinement appears to come within "classic" presentence confinement under § 18-98d(a). Therefore, § 18-98d
does lawfully eliminate credit for the time spent in custody after the successful appeal and while awaiting retrial because petitioners were imprisoned for other reasons, viz. serving other sentences on other files, during that time.
Therefore, with respect to Steve, the respondent is ordered to apply all jail credit plus any ancillary credit, such as good conduct credit earned by Steve in CR4-118626 from December 30, 1985 (the date of sentencing in the other files) to August 4, 1987 (the date of decision in his appeal) toward discharge of the sentence imposed in CR4-118626.
II CT Page 6659
Turning now to the claims of the second count of Steve's petition, i.e. that he is entitled to so-called "Seno" credit in computing the date by which the enhanced good conduct credit rate of General Statutes § 18-7a(c) ought to have commenced. Steve contends that the respondent should have calculated good conduct credit at the enhanced rate of twelve days per month by including in that calculation employment and OMP credit in determining when the five year threshold of § 18-7a has been attained. This count of Steve's petition presents the very issue which our Supreme Court declined to decide in Seno v. Commissioner, 219 Conn. 269, 282A (1991).
In Seno v. Commissioner, supra, an inmate filed a habeas corpus petition asserting that he was entitled to have enhanced good conduct credit under § 18-7a(c) begin once his jail time plus time credit from all other sources totalled five years. The habeas court dismissed the petition deciding that an inmate must spend five years in actual custody before the enhanced rate commences. Our Supreme Court reversed that decision holding that § 18-7a(c) requires the respondent to include good conduct credit in its determination of when the enhanced rate would start. But the Supreme Court refused to require the respondent to consider other sources of credit, such as employment credit, under General Statutes § 18-98a, or OMP, under General Statutes § 18-98b. The Supreme Court decided to "defer consideration of the question of whether credit time from employment and outstandingly meritorious good time must be considered in determining when a prisoner is entitled to earn statutory good time at the rate of twelve days per month," Id, 282 B.
Although the Supreme Court in Seno v. Commissioner, supra, declined to address the issue of whether employment and OMP credit ought to contribute to the starting date of enhanced good conduct credit, the analysis employed in that case to determine whether statutory good conduct credit so contributes provides a useful method of analyzing the issue which now confronts the court. In order to understand that analysis, some historical background is necessary. Before the enactment of § 18-7a(c), prisoners received good conduct credit "up front", i.e. when their sentence began to be served. This procedure is called the "posting" method of awarding good conduct credit. Under the posting system, the maximum good conduct credit was fully deducted from an inmate's sentence upon being sentenced. After § 18-7a(c) was enacted, good conduct credit is awarded only as jail time is actually served rather than being deducted immediately. CT Page 6660
Critical to the Supreme Court's decision in Seno v.Commissioner, was whether the legislature, in enacting § 18-7a(c) intended to alter or abolish, along with abolition of the posting method, the practice of including good conduct credit in determining the commencement date for enhanced good conduct credit. By examining the language of § 18-7a and the legislative history of § 18-7a(c), in particular, the Supreme Court determined that the enactment of § 18-7a(c) only affected the way in which good conduct credit was awarded and was never meant to exclude good conduct credit from the calculation of the starting date of enhanced good conduct credit, Id, 280 and 281. Our Supreme Court held that the passage of § 18-7a(c) maintained the status quo with respect to computing when good conduct credit accrues at the enhanced rate.
Employing this principle, the court holds that because employment and OMP credit were never awarded under the posting method "up front", those credits could never be used to shorten the time when the enhanced rate would begin. Formerly, the total amount of good conduct credit, earned at both the regular and enhanced rates, was computed at the time of imposition of the sentence. Employment and OMP credit, however, could only be earned upon the happening of later events, and, therefore such credits never contributed toward determining how much good conduct credit was due under the enhanced rate.
Because the enactment of § 18-7a(c) was regarded in Seno v.Commissioner, supra, as leaving the former practices with respect to computing the starting date of the enhanced good conduct credit rate intact, the court holds that only good conduct credit should be added to jail credit when calculating that starting date and that employment and OMP credit remain foreign to that calculation. The respondent's position with respect to this issue is correct.
 III
Addressing Graham's second claim, the court must determine if the respondent's act of stipulating that Graham would receive an additional 120 days credit toward discharge of his sentence in docket no. CR10-128110 prohibits the respondent from now claiming that Graham is not entitled to that credit. The court holds that the respondent is prohibited from removing that 120 days of credit.
On November 13, 1986, Graham filed a habeas corpus action, denoted as docket no. CV 86-140, in order to compel the respondent CT Page 6661 to recognize certain credit to which he felt he was entitled. On December 4, 1987, Graham and the respondent entered into a stipulation before the habeas court confirming that the respondent would award the additional 120 days of credit. Because this award satisfied Graham's claim underlying the habeas corpus petition, the habeas court dismissed that petition with prejudice on the ground of mootness.
After learning of the decision in Casey v. Commissioner, supra, however, the respondent reconsidered its concession and, in August of 1992, recalculated Graham's credits toward his discharge and eliminated the 120 days which it had awarded under the stipulation. The respondent makes no claim that the stipulation was procured by Graham as a result of fraud, misrepresentation, mistake of fact, or accident. The respondent simply contends that a subsequent clarification of the relevant law relieves the respondent from any obligation agreed to under the stipulation. The court rejects this contention.
A judgment entered as the product of a stipulation is interpreted in accordance with principles of contract law, Kaplanv. Kaplan, 8 Conn. App. 114, 118 (1986). In the present case, the respondent has offered no reason as to why the stipulation is unenforceable under contract law. The argument that the case law pertinent to the subject matter of the stipulation took an unexpected turn after the stipulation was entered into appears specious. Compliance with the stipulation has not been rendered impossible or unlawful by later case decisions. Voiding stipulations on such a basis would inject insecurity into every such agreement draining such agreements of their very essence. Consequently, the court regards the stipulation as binding the respondent to award the additional 120 days credit as it agreed to do.
 IV
Summarizing the court's rulings:
1. With respect to petitioner Steve, in docket no. CV 92-1512, the relief requested in the first count of the petition is granted in part (Section I.C.) and denied in part (Section I.D.). The second count of his petition is dismissed (Section II).
2. With respect to petitioner Graham, in docket no. CV 92-1509, the first count of his petition is dismissed (Section CT Page 6662 I.D.) and relief requested as to the second count is granted (Section III).
Sferrazza, J.