[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1791 RE: MOTION FOR PERMISSION TO WITHDRAW AS COUNSEL FOR PETITIONER
The petitioner, Bernard Thomas, filed a petition for a writ of habeas corpus on September 8, 1998, claiming that his statutory good time credits have been miscalculated by the Department of Corrections (hereinafter D.O.C.). After a careful review of the petitioner's case, Temmy Ann Pieszak who was appointed as counsel for the petitioner has moved for permission to withdraw the appearance of all public defenders from representation of the petitioner in this matter. The petitioner was notified of his counsel's motion and the petitioner has filed an objection to the motion.
This court has reviewed counsel's motion and brief as well as the petitioner's objection. This court finds that there are no non-frivolous issues to be tried in this case and that the petitioner's case is wholly without merit. Practice Book §23-42.
Therefore, counsel's motion to withdraw is GRANTED.
Furthermore, petitioner's action is hereby DISMISSED.
The petitioner was convicted on August 5, 1987 and was sentenced by the Superior Court, Judicial District of New Haven, (Sullivan, J.)to thirty-three years imprisonment, suspended after twenty years. The petitioner is currently in the custody or under the supervision of the D.O.C. and has been since April 21, 1986.
The Practice Book sets forth the procedure for the withdrawal of an appointed counsel in habeas corpus actions:
 § 23-41 Habeas Corpus-Motion for Leave to Withdraw Appearance of Appointed Counsel
 (a) When counsel has been appointed pursuant to Section 23-26, and counsel, after conscientious investigation and examination of the case, concludes that the case is wholly frivolous, counsel shall so advise the judicial authority by filing a motion for leave to withdraw from the case.
 (b) Any motion for leave to withdraw shall be filed under seal and provided to the petitioner. Counsel shall serve opposing counsel CT Page 1792 with notice that a motion for leave to withdraw has been filed, but shall not serve opposing counsel with a copy of the motion or any memorandum of law. The petitioner shall have thirty days from the date the motion is filed to respond in writing.
 (c) The judicial authority may order counsel for the petitioner to file a memorandum outlining:
 (1) the claims raised by the petitioner or any other potential claims apparent in the case;
 (2) the efforts undertaken to investigate the factual basis and legal merit of the claim;
 (3) the factual and legal basis for the conclusion that the case is wholly frivolous.
 § 23-42 Habeas Corpus-Judicial Action on Motion for Permission to Withdraw Appearance
 (a) If the judicial authority finds that the case is wholly without merit, it shall allow counsel to withdraw and shall consider whether the petition shall be dismissed or allowed to proceed, with the petitioner pro se. If the petition is not dismissed, the judge ruling on the motion to withdraw as counsel shall not preside at any subsequent hearing on the merits of the case.
 (b) If the judicial authority concludes that the petition is not wholly without merit, it shall not allow counsel to withdraw and may direct counsel to proceed.
Practice Book §§ 23-42, 23-43.
The foregoing Practice Book provisions are based on the decision by the Supreme Court of the United States in Anders v.California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as adopted by the Supreme Court of Connecticut in State v.Pascucci, 161 Conn. 382, 288 A.2d 408 (1971). See also,Fredericks v. Reincke, 152 Conn. 501, 208 A.2d 756 (1965). "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." Anders v. California, supra,386 U.S. 744; State v. Pascucci, supra, 161 Conn. 385. Such a request "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." CT Page 1793Anders v. California, supra, 386 U.S. 744; State v. Pascucci,
supra, 161 Conn. 385. "[T]he court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." Anders v.California, supra, 386 U.S. 744; State v. Pascucci, supra,161 Conn. 385.
The Supreme Court of the United States has held' that theAnders procedure is not required by the federal constitution when counsel seeks to withdraw from a habeas corpus case. Pennsylvaniav. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); see also, Franko v. Bronson, 19 Conn. App. 686, 563 A.2d 1036
(1989). The Supreme Court of Connecticut has not decided the issue, but the Appellate Court has held that Anders is applicable in appeals arising from habeas corpus cases. Franko v. Bronson,
supra, 19 Conn. App. 692. The decision in Franko was based on the statutory "right to counsel in habeas corpus cases under [General Statutes] § 51-296." Id. Because of the petitioner's statutory right to counsel and the procedures set forth in Practice Book §§ 23-42, 43, the Anders procedure is applicable in the present case. Id., 691-93; see also, General Statutes § 51-296. Under Anders, if the court finds that any of the petitioner's legal points are arguable on their merits (and therefore not frivolous), the court must afford the indigent petitioner the assistance of counsel. Anders v. California,
supra, 386 U.S. 744; see also, State v. Pascucci, supra,161 Conn. 385-86; Paulsen v. Manson, 193 Conn. 333, 340 n. 9,476 A.2d 1057 (1984).[1]
At the heart of this case is the issue of whether the petitioner's interpretation of the statutes regarding good time credit are frivolous. The petitioner claims that the D.O.C. has (1) miscalculated the statutory good time credits due the petitioner under General Statutes § 18-7a(c), and (2) improperly used the sentencing date as the starting point for calculating the petitioner's release date. (Counsel's Memo, P. 1.) Because of these alleged miscalculations, the petitioner contends that he should have been released in 1997. (Habeas Petition, ¶ 6h; Pet. Letter, August 3, 1999, p. 5.) The D.O.C., on the other hand, has estimated the petitioner's release date as February 6, 2000. (Counsel's Memo, pp. 7, 8.)[2]
The petitioner first claims that the text and legislative history of General Statutes § 18-7a(c) allows for the interpretation that a prisoner need only serve twenty days in CT Page 1794 order to receive ten (or twelve) days of statutory good time credit. (Pet. Letter, p. 3, August 3, 1999.) The position of the D.O.C., on the other hand, is that a prisoner must serve one month of time before receiving any statutory good time credit. (Pet. Letter, August 3, 1999, p. 4.)[3] The relevant text of General Statutes § 18-7a(c) is as follows:
 Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years.
General Statutes § 18-7a(c).
In cases involving issues of statutory construction, the "fundamental objective [of the court] is to ascertain and give effect to the apparent intent of the legislature." Velez v.Commissioner, 250 Conn. 536, 539-40, 738 A.2d 604 (1999). "If the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." Office of ConsumerCounsel v. Dept. of Public Utility Control, 246 Conn. 18, 29,716 A.2d 78 (1998). "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language." General Statutes § 1-1 (a); see alsoState v. Edwards, 201 Conn. 125, 132, 513 A.2d 669 (1986). "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended."Willow Springs Condominium Assn., Inc. v. Seventh BRT DevelopmentCorp., 245 Conn. 1, 26, 717 A.2d 77 (1998). "Where a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to bizarre results destructive of that purpose, the former shall prevail." (Citations omitted; internal quotation marks omitted.) Seno v. Commissioner, infra, 219 Conn. 282. Also, "[a] statute does not become ambiguous solely because the parties disagree as to its meaning." Nichols v. Warren, 209 Conn. 191,198 n. 5, 550 A.2d 309 (1988); State v. Ingram, 43 Conn. App. 801,819, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, CT Page 1795689 A.2d 472 (1997). Finally, "[i]n seeking to discern [the legislative] intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." Velez v.Commissioner, supra, 250 Conn. 540.
Looking first to the text of the statute, § 18-7a(c) provides that a prisoner may earn good time credit "for each month served." This phrase indicates that the awarding of credit comes after each month of time served. The text of this section is plain and unambiguous: a prisoner must serve one month in order to qualify for ten (or twelve) days of good time credit.
In 1991, the Supreme Court of Connecticut concluded that the legislature, by implementing § 18-7a(c), "dispensed with the posting method [in which the D.O.C. credited prisoners with their statutory good time credit before the prisoners began serving their sentence] and adopted, in its place, a system of calculating statutory good time on a monthly basis." (Emphasis added.) Seno v. Commissioner, 219 Conn. 269, 280, 593 A.2d 111
(1991). In addressing the issue of the time at which the enhanced rate (twelve days) of statutory good time commences, the court inSeno looked to the text of § 18-7a(c) and its legislative history. Id., 273-82.
In examining the text, the court placed emphasis on the word "served" as that word is used in the statute. Id., 280. As to the overall purpose of § 18-7a(c), the court indicated that the legislature had as one of its objectives the elimination of "front-ended" rewards. Id., 277. The court quoted Senator Nancy L. Johnson who stated that under the new method (as opposed to the old posting method), "the reward will not be front ended . . . [t]he reward must be earned." (Citations omitted) Id. The court explained that under the new method, "credit would actually be imposed on the time actually served rather than on the sentence imposed. . . ." (citations omitted; internal quotation marks omitted) Id., 279-80. The court also explained that another objective of the new time calculation method was to eliminate the irrational system of giving good time credit to prisoners for time the prisoners never served. Id., 278. The court explained that the legislature had adopted "a system that awards statutory good time on a monthly basis . . ." Id., 279. The court further explained that "§ 18-7a(c) was designed to CT Page 1796 alter the time at which statutory good time is awarded, and to change from the posting method to a system of good time earned monthly." Id., 280-81.
The petitioner argues that because the language of §18-7a(c) is very similar to §§ 18-7a(a) and 18-7a(b), a prisoner serving a sentence for a crime committed on or after July 1, 1983 should be credited in advance as is done for prisoners who committed crimes before that date. (Pet. Letter, August 3, 1999, pp. 4-5.)
The petitioner's argument has no merit, however, because the texts of §§ 18-7a(a) and 18-7a(b) do not contain the word "served"; those two subsections retain the posting method. The text of § 18-7a(c), on the other hand, contains the word "served" which requires that statutory good time credits may be earned only after each month is served. In comparing between § 18-7a(b) and (c), the Seno court concluded that "[t]he only substantial difference between the pertinent language of §18-7a(b) and (c) is the phrase "as such sentence is served' and the word "served" which, as previously explained, altered the time at which statutory good time is awarded." Id., 281. From this it is clear that the time for awarding statutory good time is on a monthly basis after each month is served. The decision inSeno weighs heavily against the petitioner's argument in the present case. Were the petitioner's argument to be accepted, this court would effectively reinstate the posting method for crimes committed on or after July 1, 1983. This court simply has no authority to rewrite a statute as the petitioner's interpretation would require.
In his proposed interpretation of the statute, the petitioner relies on a comment by Senator Russell Post during the legislative debate on the bill that later became § 18-7a(c). (Pet. Letter, August 3, 1999, p. 2.) Senator Post explained, "I don't believe that [§ 18-7a(c)] is going to lead to more time in jail unless the judges ignore this law." (Pet. Letter, August 3, 1999, p. 2, quoting 25 S. Proc., Pt. 12, 1982, See. P. 3831.)[4]
What the petitioner fails to address, however, are Senator Post's further comments that indicated that judges would eventually learn to adjust the initial sentences that are imposed so that the net effect would be sentences that are no longer than those imposed before the bill's effective date. See S. Proc., Pt. CT Page 1797 12, 1982 Sess., p. 3831-32. The petitioner was not sentenced until August 1987, some four years after § 18-7a(c) went into effect. By 1987, the courts would have been well aware of the methodology change in the calculation of statutory good time credits and, therefore, the petitioner's argument that he received a longer sentence because of the new method has no merit. In sum, Senator Post's comment, as referred to by the petitioner, does not save the petitioner's arguments from being found frivolous for purposes of counsel's motion for permission to withdraw.
The petitioner also points to the Seno court's discussion of comments made by Senator Howard Owens during the legislative debate of the bill. (Pet. Memo, p. 2.) Senator Owens made the following remarks: "This [new] method of computing good time would result in a longer confinement. Obviously, the intent of this legislation would be that in the event anyone who is sentenced after July one that the ten days or the twelve days respectively, whatever the case may be, credit would actually be imposed on the time actually served rather than on the sentence imposed. . . ." 25 S. Proc., Pt. 12, 1982 Sess., pp. 3821-22.
The petitioner relies on a note by the Seno court in which the court discusses Senator Owen's remarks: "Taken in the context of the other legislative history, however, suggesting more limited purposes of the act, and taken in the context of the language of the act itself, discussed in the text, we cannot ascribe to [Senator Owens] remarks a conclusive effect in support of the respondent's position." Seno v. Commissioner, supra,219 Conn. 280, n. 8. The petitioner's reliance on this analysis by the Seno
court is misguided because the language of § 18-7a(c) under scrutiny in Seno was "of a sentence" not "month served". The court in Seno was merely indicating that Senator Owens' comments were not directed to a discussion of the point at which the enhanced good time credit would begin; rather, his comments explained the general purpose of the bill which was to eliminate the posting method and require that prisoners only be given good time credit for time actually served. Rather than giving support to the petitioner's position, Senator Owens' comments weigh heavily against the petitioner's arguments and further bolster this court's conclusion that the petitioner may only receive statutory good time credit for each month served. Moreover, the collective comments of the legislators indicate an acknowledgment that the elimination of the posting method would increase the length of sentences (at least until judges made adjustments to CT Page 1798 initial sentences imposed in order to compensate for the effectively longer sentences created by the new calculation method).
In light of the text of the statute and the Supreme Court's decision in Seno, the interpretation of § 18-7a(c) that the petitioner espouses is of no merit; it is simply frivolous to argue that the phrase "earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served" means that a prisoner must only serve twenty days in order to earn ten days of good time credit. The petitioner asks this court to interpret the word "month" as meaning twenty days. Such an argument is clearly frivolous and therefore cannot be entertained. Moreover, if the court were to adopt the petitioner's interpretation, the legislative intent of §18-7a(c), which was to eliminate the posting method, would be turned on its head.
The petitioner's second claim is that the state improperly used the sentencing date as the starting point for calculating the petitioner's release date. (Counsel's Memo, p. 1.)[5] This argument also lacks merit. General Statute § 18-98d provides for credit to be granted to prisoners for time spent in presentence confinement. The pertinent language of that statute is as follows:
 Sec. 18-98d. Presentence confinement credit for confinement resulting from an offense committed on or after July 1, 1981. (a) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided . . . each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement . . .
General Statutes § 18-98d(a).
The petitioner's position is that the D.O.C. should use the first date that the petitioner was held in custody as the starting point for calculating the sentence. Were the D.O.C. to do this, however, the petitioner would be given double credit for the time CT Page 1799 spent in presentence confinement. (Counsel's Memo, p. 15.) Such a result would occur because the petitioner would be allowed "to count each day in custody prior to sentencing twice, once as a day of service of the sentence and once as a day of presentence confinement credit." (Counsel's Memo, p. 15-16.) Such an outcome would be in direct conflict with the language of § 18-98d
which provides that "each day of presentence confinement shall becounted only once for the purpose of reducing all sentences imposed after such presentence confinement." (Emphasis added.) General Statutes § 18-98d(a). The petitioner's interpretation of this statute would lead to the bizarre result of prisoners receiving double credit for presentence confinement. For these reasons,[6] the court finds that this second claim is also frivolous. As counsel has indicated, the petitioner's arguments are based upon a "misunderstanding of the relevant facts and law." (Counsel's Memo, p. 1.)
Since this court finds that the petitioner's case is wholly without merit, counsel's request for permission to withdraw isGRANTED.
Since the Court finds all of petitioner's arguments to be wholly without merit, the Court hereby orders that Petitioner's action is DISMISSED.
BY THE COURT,
Hon. Jonathan J. Kaplan