## CHONG CHUNG *v.* COMMISSIONER OF CORRECTION
## (SC 15867)

Borden, Berdon, Palmer, McDonald and Peters, Js.

---

Argued April 23—officially released July 21, 1998

*Steven R. Strom*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *L. D. McCallum*, assistant attorney general, for the appellant (respondent).

*Todd A. Edgington*, assistant public defender, for the appellee (petitioner).

*Opinion*

BORDEN, J. In this habeas corpus action, the respondent, the commissioner of correction, appeals[1] from the judgment of the trial court ordering amendment of the time sheet of the petitioner, Chong Chung, so as to give the petitioner the benefit of an additional thirty days of posted statutory good time credit pursuant to General Statutes § 18-7a (b).[2] The respondent claims that the

---

[1] After the trial court granted certification to appeal pursuant to General Statutes § 52-470. (b), the respondent appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).

[2] General Statutes § 18-7a provides: "Good conduct credit for prisoners. (a) Except as provided in subsections (b) and (c) any person sentenced to a term of imprisonment, on and after October 1, 1976, and while still serving such sentence whether such sentence is for a definite, indefinite or indeterminate term, and regardless of the institution wherein the prisoner is confined may, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a commutation or diminution of his sentence in the amount of ten days for each month, and pro rata for a part of a month, of a sentence which is for not more than five years, and fifteen days for each month, and pro rata for a part of a month, for the

trial court's award of the additional statutory good time credit resulted from the court's improper construction of § 18-7a (b). Because the trial court—understandably and properly—followed certain language in *Seno* v. *Commissioner of Correction*, 219 Conn. 269, 593 A.2d 111 (1991), and because we are now constrained to disavow that language as incorrect, we agree with the respondent and reverse the judgment of the trial court.

The petitioner brought this habeas corpus action seeking a recalculation of the amount of his statutory good time credit in accordance with *Seno* v. *Commissioner of Correction*, supra, 219 Conn. 269. The trial

sixth and each subsequent year of a sentence of more than five years. In the case of an indeterminate sentence, such credit shall apply to both the minimum and maximum term. In the case of an indefinite sentence, such credit shall apply to the maximum term only. Any act of misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such credit by the commissioner or his designee.

"(b) Except as provided in subsection (c), any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee.

"(c) Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

court agreed with the petitioner's interpretation of *Seno*, and ordered the respondent to amend the petitioner's time sheet by posting an additional thirty days thereto. This appeal followed.

The facts are undisputed. On March 23, 1982, the petitioner committed murder. On June 16, 1983, he was sentenced to incarceration for a period of thirty years and he was committed to the respondent's custody pursuant to a mittimus issued by the Superior Court. Prior to his sentencing, the petitioner had been held in pretrial custody for a period of 358 days and had been awarded 120 days of presentence good time credit. Upon the petitioner's commitment to custody under the mittimus, the respondent posted his time sheet with 4200 days of statutory good time credit, 358 days of presentence confinement time, and 120 days of presentence good time credit, for a total of 4678 days. The respondent arrived at the 4200 days of statutory good time credit by the following calculation: ten days per month for the first five years (10 days per month x 60 months) of the petitioner's thirty year sentence, or 600 days; plus twelve days per month for the next twenty-five years (12 days per month x 300 months) of the petitioner's thirty year sentence, or 3600 days.

This calculation was in accordance with the respondent's construction of § 18-7a (b), which provides for the calculation of statutory good time credit for persons who, like the petitioner, have been sentenced for offenses committed on or after July 1, 1981, but before July 1, 1983. Section 18-7a (b) provides in pertinent part: "[A]ny person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, [but before July 1, 1983] may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and

pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. . . ." See footnote 2 of this opinion. Thus, according to the respondent's construction of § 18-7a (b), a prisoner earns statutory good time credit at the rate of ten days per month for the first five years of his sentence, and at the enhanced rate of twelve days per month for the balance of his sentence.

Furthermore, under this provision, this statutory good time credit was awarded to the prisoner under the "posting" method, whereby "for purposes of administrative efficiency statutory good time was calculated and credited at the outset of a prisoner's sentence on the basis of the sentence imposed by the sentencing court." *Seno* v. *Commissioner of Correction*, supra, 219 Conn. 275. Therefore, when the petitioner in the present case was sentenced to thirty years incarceration for the crime that he had committed, he was posted with: (1) 600 days for the first five years of his sentence; (2) 3600 days for the next twenty-five years of his sentence; and (3) 478 days of presentence confinement time, consisting of 358 days of actual time of confinement plus 120 days of presentence good time. The petitioner's release date was calculated accordingly. Thus, the petitioner was posted with credit for all of the time he had spent in presentence confinement augmented by good time attributable to that time, with his enhanced rate of twelve days per month of statutory good time credit for the last twenty-five years of his sentence, and with his unenhanced rate of ten days per month for the first five years of his sentence.

Finally, it is essential to note that under this posting method employed by the respondent, the enhanced rate of twelve days per month was calculated to begin at the *sixth* year of the petitioner's confinement *under his*

*sentence as imposed by the sentencing court*, without regard to his presentence confinement time augmented by his presentence good time. In other words, in determining *when* to begin the petitioner's posting of the enhanced rate of twelve days per month statutory good time credit—that is, in determining when for purposes of § 18-7a (b) the prisoner may earn "a reduction of his sentence in the amount of . . . twelve days for each month . . . for the sixth and each subsequent year of a sentence which is more than five years"— the respondent calculated the first five years of the sentence imposed by the sentencing court, and began the enhanced rate at the commencement of the sixth year of that sentence. The respondent did not, however, calculate the "sixth and each subsequent year of a sentence which is more than five years"; General Statutes § 18-7a (b); by giving the petitioner credit for his presentence confinement time. Thus, under this calculation and posting system, the prisoner received credit for his presentence confinement time once—by having it posted as an additional credit toward his ultimate release date—but not twice by having it posted as such an additional credit *and* credited toward the calculation of when the sixth year began for purposes of determining when the enhanced monthly statutory good time would begin. Furthermore, as the petitioner conceded in oral argument before this court, before § 18-7a was amended in 1982, the respondent employed this system of calculation and posting for prisoners who, like the petitioner, had committed their crimes on or after July 1, 1981, but before July 1, 1983. All of this would have been relatively straightforward and uncontroversial, except for Public Acts 1982, No. 82-379 (P.A. 82-379), and confusion wrought by certain language in *Seno* interpreting that legislation.

In 1982, the legislature enacted P.A. 82-379, which amended § 18-7a to include subsection (c). See footnote

2 of this opinion. Under P.A. 82-379, prisoners who, like the petitioner in this case, were sentenced for crimes committed *on or after July 1, 1981, but before July 1, 1983,* continued to receive statutory good time credit according to § 18-7a (b), and prisoners who, like the petitioner in *Seno*, were sentenced for crimes committed *after July 1, 1983,* received statutory good time credit according to § 18-7a (c). *Seno* v. *Commissioner of Correction,* supra, 219 Conn. 276. In enacting subsection (c), the legislature had two related objectives: (1) "to return to the original concept behind good time, that is, the concept of reward for good behavior"; id., 277; and (2) to eradicate the irrational consequence of the posting system, whereby prisoners could earn statutory "good time for a time that they, in fact, never serve." Id., 278. These objectives were accomplished by the "[e]limination of the posting system and adoption of a system that awards statutory good time on a monthly basis . . . ." Id., 279. We noted, accordingly, that under § 18-7a (c), "by adding the phrase 'as such sentence is served' and the word 'served' to language virtually identical to § 18-7a (b), the legislature dispensed with the posting method and adopted, in its place, a system of calculating statutory good time on a monthly basis." Id., 280.

In *Seno*, we considered for the first time "whether a person sentenced to a term of imprisonment exceeding five years must be incarcerated for five calendar years in order to earn statutory good time at the rate of twelve days per month pursuant to General Statutes § 18-7a (c)." Id., 270. The petitioner in *Seno*, whose crimes were committed after July 1, 1983, had spent 197 days in presentence confinement, and had received an effective sentence of twelve years incarceration. Id., 271–72 and n.4. The commissioner calculated when the petitioner would be entitled to twelve days enhanced statutory good time credit by adding five years to the day he had

been sentenced, and then subtracting from that date the 197 days in which he had been confined before being sentenced. Id., 272 n.4. Thus, in calculating when the petitioner's enhanced twelve days per month statutory good time credit would commence, the commissioner took into account the number of days in which the petitioner had been in presentence confinement, but did not take into account either the petitioner's presentence good time, or the statutory good time that he had earned monthly as he served his sentence.

The petitioner in *Seno* claimed that under § 18-7a (c), the commissioner "should have calculated the petitioner's statutory good time at the rate of twelve days per month when his confinement time and credit time from all sources totaled five years." Id., 272.[3] "The [trial] court dismissed the petition, concluding that, under § 18-7a (c), only confinement time and credit time for presentence confinement; General Statutes § 18-98d (a);[4] are properly considered in determining when the

---

[3] The petitioner in *Seno* had received credit for 197 days of presentence confinement. In addition, he had earned credit for sixty-three days of presentence statutory good time, sixty days of outstandingly meritorious good time, and 103 days of employment time. *Seno* v. *Commissioner of Correction*, supra, 219 Conn. 272 n.5.

[4] General Statutes § 18-98d provides in relevant part: "Presentence confinement credit for confinement resulting from an offense committed on or after July 1, 1981. (a) Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subse-

enhanced rate of statutory good time commences."
*Seno* v. *Commissioner of Correction*, supra, 219
Conn. 272.

Thus, in *Seno*, we considered the question of *when*,
under § 18-7a (c), a prisoner starts to earn statutory
good time credit at the enhanced rate of twelve days
per month. Id., 270. We concluded that in "light of its
language and legislative history . . . § 18-7a (c)
requires that the [commissioner] calculate a prisoner's
sentence at the rate of twelve days per month once his
confinement time and statutory good time total five
years." Id., 282.[5] This meant that for prisoners whose
crimes had been committed on or after July 1, 1983,
the commissioner was required to calculate the date
on which the enhanced rate of statutory good time was
to commence by giving the prisoner credit for: (1) all
of his confinement time, both presentence and postsen-
tence; and (2) all of his statutory good time, both presen-
tence and the postsentence statutory good time that he
earned monthly. Moreover, because under § 18-7a (c)
postsentence statutory good time credit is earned in
effect at the end of each month of good behavior, this
calculation is made by the commissioner on a monthly
basis. Under § 18-7a (c), once those two categories total
five years, the prisoner is entitled to earn statutory good
time credit at a rate of twelve, rather than ten, days
per month.

In reaching that conclusion in *Seno*, however, we
made two related statements that we now are con-
strained to conclude were factually and legally inaccu-
rate. First, in discussing the hypothetical case of a

quently imposed, to a reduction based on such presentence confinement in
accordance with the provisions of this section. In the case of a fine each
day spent in such confinement prior to sentencing shall be credited against
the sentence at the rate of ten dollars. . . ."

[5] We declined to address, however, the petitioner's additional claims that
he was also entitled to inclusion of his credit time for employment and for
outstandingly meritorious good time in the commissioner's calculation of

prisoner whose crime had been committed prior to July 1, 1983, and who had received a seven year sentence, we stated that "[e]ssentially, the enhanced rate of statutory good time had commenced when his confinement time, approximately forty months, *and statutory good time, twenty months,* totaled five years." (Emphasis added.) Id., 276. That statement was incorrect because there was no indication that in applying § 18-7a (b), which applied to such a prisoner, statutory good time was used in properly calculating when the enhanced rate of twelve days per month would commence.

Indeed, that statement was inconsistent with the immediately preceding paragraph in *Seno*, in which we indicated the proper calculation for such a prisoner: ten days per month for the first sixty months, totaling 600 days; and twelve days per month for the remaining twenty-four months, totaling 288 days; yielding a total of 888 days posted credit. Id., 275. Under that proper calculation, the commissioner calculated when the enhanced rate of posted statutory good time commenced by calculating when the sixth year of the sentence imposed by the court began, without regard to any statutory good time earned or to be earned during that first five years.

The second misstatement in *Seno* was that "the [commissioner] necessarily concedes that had the petitioner been sentenced for an offense committed before July 1, 1983, he would have earned statutory good time at the rate of twelve days per month *once his confinement time and statutory good time totaled five years.*" (Emphasis added.) Id., 277. This was incorrect because the commissioner had made no such concession, nor was any such concession necessarily implied by the commissioner's proffered interpretation of § 18-7a (c),

when his enhanced rate of twelve days per month began. *Seno* v. *Commissioner of Correction,* supra, 219 Conn. 282–82B.

the statute at issue in that case, and because, as the petitioner concedes in the present case, under § 18-7a (b), as a matter of prior interpretation by the commissioner, statutory good time credit had not been included in the calculation of when a prisoner's enhanced statutory good time began.[6]

The effect of these misstatements, however, was to mislead the trial court in the present case into an erroneous conclusion. Although *Seno* involved only the interpretation of § 18-7a (c), and the present case involves only the interpretation of § 18-7a (b), the trial court properly took the misstatements in *Seno* about § 18-7a (b) as a "mandate . . . that enhanced statutory good time starts after all confinement time and statutory good time equals five years." Thus, in calculating the first five years of the petitioner's sentence, during which he was to receive ten days per month statutory good time credit, as opposed to the balance of the sentence, during which he was to receive twelve days per month statutory good time credit, the trial court eschewed using the sixty month figure employed by the respondent.

Instead, the trial court calculated that the first five years meant 1825 days (365 days x 5 years), reduced by the 478 days of presentence confinement and presentence good time credit, or a total of 1347 days. The trial court then rounded off that 1347 days to 45 months (45 months x 30 days = 1350 days). The court therefore ruled that the respondent was required to calculate the petitioner's statutory good time credit at the rate of ten days per month for forty-five months, for a total of 450 days, and at the enhanced rate of twelve days per month for the balance of his thirty year sentence of 315 months, or 3780 days, for a total posting of 4230 days. Thus, the

---

[6] As the respondent has reminded us in this appeal, although he moved for reargument or reconsideration after *Seno* was decided, and brought these two inaccuracies to this court's attention, we did not amend that opinion accordingly.

court ordered the respondent "to amend the petitioner's time sheet to reflect posting at the commencement of his sentence of four thousand two hundred thirty (4230) days of statutory good time in addition to [presentence commitment] time of three hundred fifty eight (358) days and [presentence] good time of one hundred and twenty (120) days." The net effect of this order was as follows: whereas under the respondent's calculation the petitioner was posted at the commencement of his sentence with a total of 4678 days (4200 + 358 + 120), under the trial court's order the respondent must post the petitioner at the commencement of his sentence with 4708 days (4230 + 358 + 120), or thirty days more than the respondent has calculated.

The respondent does not urge us to revisit our conclusions in *Seno* regarding the proper interpretation of § 18-7a (c). Although he disagrees with it, he accepts it as the prevailing interpretation of § 18-7a (c). He does urge us, however, not to convert the erroneous dictum in *Seno* regarding the interpretation of § 18-7a (b) into a holding of this court. We agree with the respondent, and we conclude that under § 18-7a (b), a prisoner's enhanced statutory good time commences at the sixth year of his sentence as imposed by the court, without regard to any presentence confinement time or presentence good time. Under this interpretation, therefore, the respondent's calculation was correct.[7]

---

[7] The author of this opinion acknowledges that this is the second time in recent years that he has been required to disavow explicit language in a prior opinion authored by him for this court. Compare *Ross* v. *Giardi*, 237 Conn. 550, 680 A.2d 113 (1996), and *Matarazzo* v. *Rowe*, 225 Conn. 314, 623 A.2d 470 (1993). The author's only response is to quote United States Supreme Court Justice Robert Jackson when he concurred in the court's opinion in *McGrath* v. *Kristensen*, 340 U.S. 162, 71 S. Ct. 224, 95 L. Ed. 173 (1950), despite the fact that it was contrary to an opinion he had issued as Attorney General of the United States. Justice Jackson explained: "Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others. See Chief Justice Taney, *License Cases*, [46 U.S. (5 How.) 504, 575, 12 L. Ed.

First, the respondent's interpretation of § 18-7a (b) is consistent with its language. That statute provides for good conduct credit of ten days per month "of a sentence up to five years," and twelve days per month "for the sixth and subsequent year of a sentence which is more than five years." This language strongly suggests that the phrases "sentence up to five years," and "sentence which is more than five years," refer to the sentence imposed by the sentencing court. There is no indication in this language to suggest that it also includes any presentence confinement time or presentence good time.

Second, this interpretation is consistent with the history of § 18-7a (b). The posting method of calculating statutory good time credit was first instituted prior to 1911. See *Nichols* v. *Warren*, 209 Conn. 191, 199, 550 A.2d 309 (1988). From that time until the amendment of § 18-7a in 1982 by P.A. 82-379, as the respondent urges us to recognize, the posting method did not take into account any presentence confinement or good time. Indeed, until 1967 a prisoner was not credited at all for presentence confinement time; see Public Acts 1967, No. 549, § 15, as amended by Public Acts 1969,

---

256 (1847)], recanting views he had pressed upon the Court as Attorney General of Maryland in *Brown* v. *Maryland,* [25 U.S. (12 Wheat.) 419, 6 L. Ed. 678 (1827)]. Baron Bramwell extricated himself from a somewhat similar embarrassment by saying, 'The matter does not appear to me now as it appears to have appeared to me then.' *Andrews* v. *Styrap,* 26 L. T. R. (N.S.) 704, 706. And Mr. Justice Story, accounting for his contradiction of his own former opinion, quite properly put the matter: 'My own error, however, can furnish no ground for its being adopted by this Court . . . .' *United States* v. *Gooding,* [25 U.S. (12 Wheat.) 460, 478, 6 L. Ed. 693 (1827)]. Perhaps Dr. Johnson really went to the heart of the matter when he explained a blunder in his dictionary—'Ignorance, sir, ignorance.' But an escape less self-depreciating was taken by Lord Westbury, who, it is said, rebuffed a barrister's reliance upon an earlier opinion of his Lordship: 'I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion.' If there are other ways of gracefully and good-naturedly surrendering former views to a better considered position, I invoke them all." *McGrath* v. *Kristensen,* supra, 177–78 (Jackson, J., concurring).

No. 735, § 1, Public Acts 1975, No. 75-355, §§ 2, 3, and Public Acts 1980, No. 80-442, §§ 5, 28, and now codified as General Statutes § 18-97;[8] and until 1975 there was no credit for presentence good time. See Public Acts 1975, No. 75-222, as amended by Public Acts 1976, No. 76-358, § 3, and Public Acts 1980, No. 80-442, §§ 7, 28, and now codified as General Statutes § 18-98c.[9]

Third, given this history, it would be incongruous to conclude that, as a result of P.A. 82-379, the petitioner gained additional credit to which he would not have been entitled in the absence of that legislation. Public Act 82-379, which created § 18-7a (c) to apply to prisoners whose crimes were committed on or after July 1,

[8] General Statutes § 18-97 provides: "Confinement under a mittimus: Presentence confinement credit prior to July 1, 1981. Any person receiving a fine or a sentence to a correctional institution or a community correctional center for an offense committed prior to July 1, 1981, shall receive credit towards any portion of such fine as is not remitted or any portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such fine or sentence is imposed, provided he shall conform to the rules of the institution. Upon notification from the Commissioner of Correction, the clerk of the court shall enter such credit upon the order in the case of a fine, and upon the mittimus in the case of a sentence and it shall be the duty of the agency or person that held such person under such mittimus to inform the clerk of the court of the proper amount of such credit. In the case of a fine each credit day shall be computed at the rate of ten dollars. In no event shall credit be allowed in excess of the fine or sentence actually imposed."

[9] General Statutes § 18-98c provides: "Good conduct credit for presentence confinement prior to July 1, 1981. In addition to the time credits provided for in sections 18-97 and 18-98, any person who has been denied bail or who has been unable to obtain bail and who subsequently is fined or sentenced to a correctional institution or a community correctional center shall receive a good conduct credit towards any portion of such fine as is not remitted or any portion of such sentence as to which execution is not suspended, such credit to be at the rate of ten days for each month of presentence confinement and such credits to be awarded only for prompt obedience to the rules of the correctional institution or community correctional center wherein the person is confined. The provisions of this section allowing credit at the rate of ten days for each month of presentence confinement shall apply to those periods of time spent in presentence confinement pursuant to

1983, was animated by a legislative desire to reduce credits that theretofore had been available. Before P.A. 82-379, under the respondent's then prevailing interpretation of § 18-7a (b), as the petitioner acknowledges, a prisoner in the petitioner's situation would have received credit for his presentence confinement time and presentence good time but once, namely, as credits toward his ultimate release date, but not also as credits toward the date upon which he would begin to earn statutory good time at the enhanced rate. Under the petitioner's interpretation of § 18-7a (b), however, he would receive credit for those times twice. We decline to construe § 18-7a (b) to yield such a result.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the writ of habeas corpus.

In this opinion the other justices concurred.

sections 18-97 and 18-98, which occur after October 1, 1976, for an offense committed prior to July 1, 1981."