DARRYL WHITAKER *v.* COMMISSIONER OF
CORRECTION
(AC 24485)

Schaller, Dranginis and McLachlan, Js.

---

Argued November 19, 2004—officially released August 2, 2005

*Temmy Ann Pieszak*, chief of habeas corpus services, with whom was *George M. Cameron*, special deputy public defender, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Darryl Whitaker, appeals from the judgment of the habeas court granting him partial relief on his claim that the respondent, the commissioner of correction, miscalculated various credits on his criminal sentence. On appeal, the petitioner's numerous statutory and constitutional claims[1] can be sorted into two categories of claimed error. The petitioner contends that the court improperly concluded that (1) the respondent properly construed and applied General Statutes § 18-98d and did not violate his constitutional rights to equal protection and due process, as well as the separation of powers doctrine, and (2) the respondent properly construed and applied General Statutes § 53a-38 (c) and did not violate his constitutional rights to equal protection and due process, as well as the prohibition against double jeopardy

---

[1] Throughout his brief, the petitioner argues that the respondent's calculations regarding his prison sentence violated both his state and federal constitutional rights. He has failed, however, to brief separately the state constitutional issues. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the [petitioner] has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the [petitioner's] claim . . . ." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004). Accordingly, we limit our review to the relevant provisions of the federal constitution.

and the separation of powers doctrine. We reverse in part and affirm in part the judgment of the habeas court.

The following facts and procedural history are relevant to our discussion. The petitioner, acting pro se, commenced the present action. The petitioner subsequently obtained counsel, and the operative petition, captioned "Corrected Substitute Amended Petition," was filed on February 5, 2003. The parties agreed to forgo a trial, as the material issues of fact were not in dispute.

The petitioner was the defendant in criminal docket number 29795 in the judicial district of Fairfield at Bridgeport (docket 1) for offenses that occurred on November 9, 1982. The petitioner was held in presentence confinement from November 10 through 12, 1982, after which he posted bond and was released from the respondent's custody. The petitioner also was the defendant in criminal docket number 29794 in the judicial district of Fairfield at Bridgeport (docket 2) for offenses that occurred on August 18, 1982. Finally, the petitioner was the defendant in docket number 29896 in the judicial district of Fairfield at Bridgeport (docket 3) for offenses that occurred on February 8, 1983. He was held in presentence confinement with respect to docket 3 starting on February 10, 1983, and on all three dockets starting on May 4, 1983, when the petitioner was ordered held in lieu of bond on dockets 1 and 2.[2]

On January 20, 1984, the court, *Callahan, J.*, sentenced the petitioner with respect to docket 1.[3] On count

---

[2] The petitioner has remained continuously in the custody of the respondent since February 10, 1983. The respondent's recalculation of the petitioner's sentence on docket 1 and the petitioner's forfeiture of statutory good time credit had advanced the petitioner's release date on docket 1 to September, 1987.

[3] Docket 1 consisted of three separate counts. The petitioner was convicted and sentenced in count one for sexual assault in the third degree in violation of General Statutes § 53a-72a, in count two for larceny in the fourth degree in violation of General Statutes § 53a-125 (a) and in count three for

one, the court sentenced him to a term of five years incarceration, on count two, three months incarceration, and on court three, one year incarceration. The court further ordered that the terms of incarceration run concurrently with each other, resulting in a total effective sentence of five years. The respondent calculated the petitioner's estimated release date as follows. Adding five years, the total effective sentence for docket 1, to the date of sentencing, January 20, 1984, the respondent arrived at the maximum release date of January 19, 1989. Pursuant to General Statutes § 18-7a (b)[4] and the "posting"[5] method then employed by the respondent, the petitioner received an advance of statutory good time credit[6] of 600 days.[7] The respondent

sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).

[4] General Statutes § 18-7a (b) provides: "Except as provided in subsection (c), any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

[5] "[P]osting is a practice whereby department of correction personnel estimate and credit statutory good time at the *outset* of a prisoner's sentence on the basis of the term imposed by the sentencing court as opposed to the term of imprisonment actually served." (Emphasis added.) *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 824, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003).

[6] "[S]tatutory good time credit . . . is credit earned by a sentenced inmate for his or her good behavior. Statutory good time credit is governed by General Statutes § 18-7a . . . ." (Citations omitted.) *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 217 n.2, 756 A.2d 1264 (2000).

[7] We note that in *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 537–38, 738 A.2d 604 (1999), our Supreme Court concluded that General Statutes § 18-100d rendered General Statutes §§ 18-7, 18-7a (c), 18-98a, 18-98b and 18-98d (b) inapplicable to persons sentenced to terms of imprisonment for crimes committed on or after October 1, 1994.

also applied the petitioner's presentence confinement credit[8] for time previously served in the amount of 264 days[9] and presentence confinement good time credit of eighty-eight days.[10] After subtracting all of the applicable credits, the respondent calculated the petitioner's release date as June 12, 1986.

On April 5, 1984, Judge Callahan sentenced the petitioner with respect to docket 2.[11] The court ordered that the petitioner receive a term of incarceration of ten years, execution suspended after five years. The

---

[8] General Statutes § 18-98d (a) (1) provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and (B) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement, except that if a person is serving a term of imprisonment at the same time such person is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. . . ."

[9] The petitioner was confined from November 10 to 12, 1982 (three days), and May 4, 1983, to January 20, 1984 (261 days).

[10] General Statutes (Rev. to 1981) § 18-98d (b) provides: "In addition to any reduction allowed under subsection (a) of this section, if such person obeys the rules of the facility such person may receive a good conduct reduction of any portion of a fine not remitted or sentence not suspended at the rate of ten days or one hundred dollars, as the case may be, for each thirty days of presentence confinement; provided any day spent in presentence confinement by a person who has more than one information pending against such person may not be counted more than once in computing a good conduct reduction under this subsection." Public Acts 2002, No. 02-18, increased the rate of good conduct fine reduction from $100 to $500 for each thirty days of presentence confinement.

[11] Docket 2 consisted of a single conviction for sexual assault in the first degree in violation of General Statutes § 53a-70 (a).

court further ordered that the docket 2 sentence run concurrently with the sentence from docket 1. The court applied § 53a-38 (b),[12] merged the sentences and determined which sentence had the longer term to run. It estimated the petitioner's discharge date to be August 26, 1986.

On February 27, 1985, the court, *Curran, J.*, sentenced the petitioner on docket 3.[13] He received the following terms of incarceration: twenty-five years on count one, twenty years on count two, twenty years on count three and ten years on count four. The court ordered each of these sentences to be served consecutively to each other and to the petitioner's sentence on dockets 1 and 2. With respect to count five of docket 3, the court ordered a prison term of ten years to be served concurrently with counts one through four of docket 3 and with the petitioner's sentences on the other charges. The total effective docket 3 sentence totaled seventy-five years.

Following his successful appeal to our Supreme Court; *State* v. *Whitaker*, 202 Conn. 259, 260, 520 A.2d 1018 (1987);[14] the petitioner again was convicted of the

---

[12] General Statutes § 53a-38 (b) provides: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run; (2) *if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term.*" (Emphasis added.)

[13] Docket 3 contained five separate counts. The petitioner was convicted in count one of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), in count two of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), in count three of sexual assault in the first degree in violation of General Statutes § 53a-70 (a), in count four of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1) and in count five of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).

[14] "On appeal, the [petitioner] contends that the trial court erred (1) in summarily quashing a subpoena, (2) in ordering [him] to produce statements of certain alibi witnesses, and (3) in imposing a total effective sentence

docket 3 charges and received the following sentence. On each of the five counts, the court, *Reilly, J.*, on July 10, 1987, ordered that the petitioner serve twenty years, with the sentences on counts one and three to run consecutively and the sentences on counts two, four and five to run concurrently. The petitioner, therefore, on resentencing on docket 3, received a total effective term of forty years to run concurrently with the sentence he was then serving for dockets 1 and 2.[15]

In order to calculate the petitioner's release date, the respondent had to comply with § 53a-38 (c), which provides that "[w]hen a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such person for the same offense or for an offense based on the same act, the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced, and all time served under or credited against the vacated sentence shall be credited against the new sentence." Additionally, the forty year sentence merged with the sentences imposed on dockets 1 and 2 by operation of § 53a-38 (b) (1). The respondent credited the petitioner 344 days of presentence confinement credit for the period of time that he had been held as a pretrial detainee from February 10, 1983, until January 20, 1984, the date he was sentenced on docket 1.[16]

---

greater than that which could be imposed for murder. Though finding no error on the third issue, we agree that the trial court erred in quashing the subpoena and in ordering the production of the witnesses' statements. We therefore reverse this case and remand it for a new trial." *State* v. *Whitaker,* supra, 202 Conn. 260.

[15] The resentencing mittimus does not indicate whether the forty year sentence was to run concurrently or consecutively to the petitioner's prior sentence. It is the law of this state that in the absence of an indication to the contrary, two separate sentences are presumed to be concurrent rather than consecutive. See *State* v. *Pina,* 185 Conn. 473, 478–79, 440 A.2d 962 (1981); *Redway* v. *Walker,* 132 Conn. 300, 303, 43 A.2d 748 (1945).

[16] The 344 days of presentence confinement included the 261 days of presentence confinement that already had been counted once by the respondent when determining the petitioner's release date with respect to docket 1.

In his operative petition for the writ of habeas corpus, the petitioner alleged numerous errors on the part of the respondent.[17] The court concluded that the petitioner was entitled to (1) presentence credit from February 10, 1983, until January 20, 1984, (2) any presentence confinement good conduct credit earned by the petitioner in accordance with § 18-98d (b), and not forfeited, from February 10, 1983, until January 20, 1984, (3) postconviction credit earned on count five from February 27, 1985, the date of his original sentencing on docket 3, until February 20, 1987, ten days after the date of the reversal by the Supreme Court, and any applicable good conduct credit that was earned during that time period and not forfeited to be applied only to count five as imposed on July 10, 1987, (4) any good conduct credit earned by way of the up-front posting method for the forty year sentence imposed on July 10, 1987, and (5) any good time credits earned on dockets 1 and 2 between January 20, 1984, through July 10, 1987, without applying credit twice for a single day of each type of credit. Simply put, the court found in favor of the petitioner with respect to his claims that the respondent had failed to apply all statutory good time,

---

[17] The petitioner alleged that the respondent (1) violated General Statutes § 53a-38 (c) by failing to credit him 693 days served on the original docket 3 sentence on February 27, 1985, until January 22, 1987, (2) improperly failed to apply each day of presentence confinement earned under docket 1 and improperly failed to calculate presentence good conduct credit with respect to docket 2, (3) violated General Statutes § 18-98d by failing to apply each day of presentence confinement to his aggregate total effective sentence, (4) violated General Statutes §§ 18-7, 18-7a and *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 756 A.2d 1264 (2000), by failing to calculate the statutory good time applicable to reduce the discharge date of his merged and aggregated total effective sentence, (5) improperly failed to calculate the seven day job credit applicable to his merged and aggregated total effective sentence, (6) violated his state and federal constitutional rights to equal protection, (7) violated his state and federal constitutional rights to due process of law, (8) violated the prohibition against double jeopardy and (9) violated the separation of powers doctrine by impairing the judicial authority's right to impose concurrent sentences.

presentence good time and seven day job credits earned during the service of his continuous term of incarceration to the aggregate sentence imposed in dockets 1, 2 and 3, but rendered judgment in favor of the respondent on the remaining claims.[18]

The petitioner filed a motion for reconsideration of the portion of the decision concerning jail credit for time served simultaneously in pretrial confinement on multiple docket numbers. The court denied his motion on the ground that, at the time the motion was filed, the petitioner was not in the custody of the respondent with respect to dockets 1 and 2, and, therefore, the court lacked jurisdiction. The petitioner filed a motion for reconsideration of the court's ruling, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

I

The petitioner first claims that the respondent improperly construed and applied § 18-98d, and violated his constitutional rights to equal protection and due process as well as the doctrine of separation of powers. Specifically, the petitioner claims that he was entitled

---

[18] The respondent argues that because the court awarded the petitioner some of the credit he was seeking, he was not aggrieved and, therefore, we lack subject matter jurisdiction to hear his appeal. We disagree. "[P]roof of aggrievement is . . . an essential prerequisite to the court's jurisdiction of the subject matter of the appeal. . . . Ordinarily, a party that prevails in the trial court is not aggrieved. . . . Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought." (Citation omitted; internal quotation marks omitted.) *State* v. *Sanders*, 86 Conn. App. 757, 763–64, 862 A.2d 857 (2005).

Nevertheless, a party that receives partial relief has been aggrieved for purposes of appeal. "A prevailing party, however, can be aggrieved if the relief awarded to that party falls short of the relief sought." *Blue Cross/ Blue Shield of Connecticut, Inc.* v. *Gurski*, 47 Conn. App. 478, 481, 705 A.2d 566 (1998); see also *Seymour* v. *Seymour*, 262 Conn. 107, 114–15, 809 A.2d 1114 (2002). In the present case, the petitioner did not receive all the relief, in the form of jail credits, that he sought. Accordingly, the petitioner was aggrieved for purposes of appeal.

to presentence confinement credit[19] for each of the separate dockets on which he was held. We are not persuaded.

At the outset, we identify the applicable standard of review. The petitioner's claims raise issues of statutory construction, over which our review is plenary. *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 403, 780 A.2d 903 (2001); *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 238 n.23, 756 A.2d 1264 (2000). "A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. [General Statutes § 1-2z]." (Citation omitted; internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 129, 848 A.2d 451 (2004).

The appropriate starting point for our discussion is to review in detail our Supreme Court's recent decision in *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 715 (2004), which controls many of the issues raised in the petitioner's appeal, and its two companion cases, *Cox* v. *Commissioner of Correction*, 271 Conn. 844, 860 A.2d 708 (2004), and *Hunter* v. *Commis-*

---

[19] Our Supreme Court has explained that "[t]he purpose of the jail time statutes is to give recognition to the period of presentence time served and to permit the prisoner, in effect, to commence serving his sentence from the time he was compelled to remain in custody due to a mittimus . . . or because of the court's refusal to allow bail or the defendant's inability to raise bail . . . ." (Internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 247, 756 A.2d 1264 (2000).

*sioner of Correction*, 271 Conn. 856, 860 A.2d 700 (2004).[20]

The petitioner in *Harris* was held in presentence confinement and faced pending criminal charges on various dockets. *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 811–13. On June 16, 2000, he was sentenced on two dockets stemming from charges in Manchester to a total effective term of four years incarceration concurrent to his then present sentence, which was unrelated to the proceedings at issue. Id., 812. Eleven days later, on June 27, 2000, the trial court sentenced the petitioner on a docket stemming from charges in Hartford to a term of four years incarceration, concurrent to all of the sentences that he was serving at that time. Id. The commissioner of correction credited the petitioner with 751 days of presentence confinement credit on one of the Manchester sentences, but did not apply those credits to the Hartford sentence. The commissioner of correction then determined that the Hartford sentence, which had longer to run, became the controlling sentence pursuant to § 53a-38 (b). Id., 813–14.

In holding that the commissioner of correction improperly calculated the petitioner's credits, the habeas court in *Harris* concluded that the rationale set forth in *Payton* v. *Albert*, 209 Conn. 23, 547 A.2d 1 (1988) (en banc), overruled in part on other grounds by *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 255 n.44, 756 A.2d 1264 (2000), was applicable. *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 815. The habeas court in *Harris* based its decision on the calculation method utilized in *Payton*. Id. Additionally, the habeas court in *Harris* agreed in part with the petitioner's equal protection claim. Id., 816. Essentially, the

[20] We note that the *Harris*, *Cox* and *Hunter* decisions were released after oral argument before us in the present case.

court concluded that the commissioner of correction's methodology for applying presentence confinement credit would treat persons sentenced to concurrent terms on the same day more advantageously than those sentenced on different days. Id., 816–17. The court, however, did not attribute the disparate treatment to the petitioner's indigency. Id., 816.

Our Supreme Court reversed the judgment of the habeas court. Id., 844. In doing so, it focused on the plain language of § 18-98d (a) (1), which provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed; provided (A) *each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement; and* (B) *the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement . . . ."* (Emphasis added.) The court also noted that although the legislature has permitted concurrent prison terms to be served together, they remain separate and distinct from one another. Id., 819.

Ultimately, our Supreme Court concluded that once the commissioner of correction had counted the 751 days of presentence confinement credit for the Manchester dockets, those credits *could not be counted again and applied against the Hartford docket.* Id., 820. In doing so, the court limited *Payton* to its facts,

namely, when concurrent sentences are imposed on the same day. Id., 822–23. The court also rejected the petitioner's equal protection claim, explaining that presentence credit is a creature of statute, not a constitutional requirement. Id., 833. Because persons receiving concurrent sentences on different dates do not constitute a suspect class, the proper constitutional analysis is whether this distinction is rationally related to a legitimate government interest. Id., 833–34. After concluding that a rational basis existed for treating persons, like the petitioner, who were sentenced to concurrent prison terms on different dates, differently from those who receive concurrent sentences on the same day, the court determined that the equal protection claim failed. Id., 837. With the principles of *Harris* in mind, we now turn to the petitioner's specific claims.

A

Statutory Claims

In the present case, the petitioner contends that the court improperly interpreted § 18-98d and, in doing so, ran afoul of the precedent set forth in *Payton* v. *Albert,* supra, 209 Conn. 23. The petitioner also expressly relies on the habeas courts' decisions in *Harris, Hunter* and *Cox.*[21] The petitioner argues that the court failed to apply each day served concurrently in presentence confinement on dockets 1, 2 and 3 as a credit against the total effective sentence in each respective docket under which he was held. In light of our Supreme Court's holding in *Harris* v. *Commissioner of Correction,*

[21] See *Harris* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. 3480 (June 4, 2003), rev'd sub nom. *Harris* v. *Commissioner of Correction,* 271 Conn. 808, 860 A.2d 715 (2004); *Cox* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. 3701 (June 24, 2003), rev'd sub nom. *Cox* v. *Commissioner of Correction,* 271 Conn. 844, 860 A.2d 708 (2004); and *Hunter* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. 3434 (June 11, 2003), rev'd sub nom. *Hunter* v. *Commissioner of Correction,* 271 Conn. 856, 860 A.2d 700 (2004).

supra, 271 Conn. 808, and its two companion cases, the petitioner's arguments must fail.

1

We first address the petitioner's claims that the court violated the rule set forth by our Supreme Court in *Payton* v. *Albert*, supra, 209 Conn. 23. In that case, the petitioner was held in presentence confinement on one docket for a total of 113 days and on a second docket for seventy-six days. Id., 24–27. On January 16, 1987, he pleaded guilty to the charges stemming from both dockets and received two and one-half years to serve on each. Id., 27. The sentencing court ordered the terms of incarceration to run concurrently. Id. Our Supreme Court held that the proper determination of the petitioner's discharge date was accomplished by taking the longer sentence to run and using those, and only those, credits. Id., 32.

In *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 808, our Supreme Court expressly limited *Payton* to a factual scenario in which the prisoner has been sentenced to concurrent prison terms *on the same day.* "The only issue before this court in *Payton* was whether presentence confinement days unique to one sentence could be transferred to another sentence, imposed on the same date, for the purpose of accelerating the petitioner's discharge date." Id., 820. Additionally, "[t]he *Payton* court's commentary on the respondent's method for calculating Payton's discharge date must be read in the context of the issue posed by that case, namely, whether presentence confinement days accrued solely in connection with one sentence could be transferred to another concurrent sentence imposed on the same date for the purpose of advancing the petitioner's discharge date. . . . Certainly, it was not the court's intent in *Payton* to prescribe a sweeping mandate obligating the respondent to apply the same

procedure when concurrent sentences are imposed on different dates. Notwithstanding that conclusion, we believe that our construction of §§ 18-98d and 53a-38 (b) in [*Harris*] is not inconsistent with the respondent's application of those same statutes in *Payton*. When concurrent sentences are imposed on the same date, as in *Payton*, the available presentence confinement days have not yet been utilized. The respondent thus examines and applies the presentence time served under each docket and then establishes the discharge date by choosing the sentence which has the longest term to run. See General Statutes § 53a-38 (b) (1). Conversely, when concurrent sentences are imposed on different dates, the presentence confinement days accrued simultaneously on more than one docket are utilized fully on the date that they are applied to the first sentence. Hence, they cannot be counted a second time to accelerate the discharge date of any subsequent sentence without violating the language of § 18-98d (a) (1) (A)." (Citation omitted.) *Harris* v. *Commissioner of Correction*, supra, 822–23.

In the present case, the petitioner was sentenced to different terms of incarceration on different dates: January 20, 1984, April 5, 1984, February 27, 1985, and then resentenced on July 10, 1987, on docket 3. Because he was not sentenced to concurrent terms on the same date, *Payton* is inapplicable to this case.

2

The petitioner next argues that the court failed to apply each day served concurrently in presentence confinement on dockets 1, 2 and 3 as a credit against the total effective sentence in each respective docket under which he was held. In light of the *Harris* holding, this was not improper. We further conclude, however, that it was improper for the respondent to apply presentence

confinement credit to docket 3 after it had been credited against docket 1.[22]

In *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 808, our Supreme Court, relying on the language in § 18-98d (a) (1) (A), which provides that "each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement," held that once the 780 days of presentence credit confinement was applied to the sentence stemming from the Manchester dockets, they could not be counted again to reduce the time owed on the sentence originating from the Hartford docket, even though the sentences were to be served concurrently. Id., 820. In the present case, after the respondent applied the petitioner's 261 days of presentence confinement credit to docket 1, that time could not be included in the 344 days credited by the court in docket 3. Accordingly, the petitioner's discharge date must be recalculated. See *Cox* v. *Commissioner of Correction*, supra, 271 Conn. 853, 855.

## B

### Constitutional Claims

#### 1

The petitioner next claims that the respondent's method of calculating and applying presentence confinement credits violated his right to equal protection on the basis of his indigency.[23] Specifically, the petitioner

---

[22] Although the respondent has not filed a cross appeal in this case, we note that the petition for a writ of habeas corpus placed the presentence confinement issue before the habeas court and that the petitioner has elected to make this an issue on appeal. Because the issue is before us, we must comply with the statutory language as enacted by the legislature.

[23] The equal protection clause of the fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

Although the petitioner failed to brief separately the state constitutional issue, thereby limiting our review to the federal constitution; see footnote

argues that the respondent's "refusal to credit each day of detention on a docket number to the total effective concurrent sentence imposed on each docket number, or to the merged total effective sentence imposed after a period of presentence confinement implicates the fundamental right to liberty and must be justified by a compelling state interest."

Our Supreme Court rejected this exact claim in *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 836–41. In doing so, it concluded that the statutory scheme at issue "neither impinges on a fundamental right nor burdens a suspect class . . . ." Id., 840. It therefore analyzed the scheme and determined that it was rationally related to a legitimate public purpose and therefore passes constitutional muster. Id., 841. As an intermediate appellate court, we, of course, are bound by our Supreme Court's decisions. See *State* v. *Nogueira*, 84 Conn. App. 819, 825, 856 A.2d 423 (2004); *Boretti* v. *Panacea Co.*, 67 Conn. App. 223, 231, 786 A.2d 1164 (2001), cert. denied, 259 Conn. 918, 791 A.2d 565 (2002). Thus, the petitioner's equal protection claim must fail.

2

The petitioner next claims that the respondent violated his right to due process.[24] Specifically, he contends that he is entitled to serve only the stated length of his

1; we identify the corresponding section of our state constitution. Article first, § 20, as amended by articles five and twenty-one of the amendments, provides in relevant part: "No person shall be denied the equal protection of the law . . . ." Our Supreme Court has noted that the equal protection clauses of the state and federal constitutions share a like meaning and impose similar constitutional limitations. See *Horton* v. *Meskill*, 172 Conn. 615, 639, 376 A.2d 359 (1977).

[24] The petitioner also argues that protection against double jeopardy is part of due process protection. Because in part II we conclude that the petitioner's double jeopardy rights were not violated, it follows that there can be no due process violation on that basis.

total effective sentence, not the stated length plus the period of presentence confinement. We disagree.

"The analytical framework for reviewing substantive due process claims is well established. If the petitioner can demonstrate that [his claim] implicates a fundamental right, we must apply strict scrutiny to that statutory provision and require the state to show that the denial of [that claim] furthers a compelling state interest. . . . If, however, the petitioner's claim does not implicate a fundamental right, we review [it] under a rational basis test . . . . [T]he state must show only that the law is not arbitrary or capricious, that is, that it bears a reasonable relation to some legitimate state purpose." (Citations omitted.) *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 888, 792 A.2d 774 (2002).

In setting forth his claim, the petitioner again argues that the respondent's application of § 18-98d implicated a fundamental right, thereby requiring the showing of a compelling state interest. In *Hammond*, however, our Supreme Court stated: "It is well established that presentence credit is a creature of statute and that, as a general rule, such credit is not constitutionally required. . . . Because such credit is not constitutionally mandated, it is not one of those few rights deemed so fundamental that the state cannot impinge upon it in the absence of a compelling reason. It is not the province of [the courts] to create substantive constitutional rights in the name of guaranteeing equal protection of the laws. . . . Rather, [t]he key to discovering whether a right is fundamental is in assessing whether the right is explicitly or implicitly guaranteed by the [c]onstitution." (Citations omitted; internal quotation marks omitted.) Id., 879–80. It then determined that it would apply rational basis review to the claim, concluding that "[c]redit for presentence incarceration does not fall within this exalted group of rights that are recognized as fundamental." Id., 881. Because the record does not

reveal that the petitioner was confined longer than the statutory maximum prison terms on the basis of his indigency; see id., 879 n.23; we conclude that the rule set forth in *Hammond* applies.[25] We must, therefore, determine whether the respondent's statutory application was rationally related to a legitimate government interest, in this case, ensuring that a convicted offender serves the full term of each sentence imposed.

We have concluded that the respondent's application of § 18-98d satisfies the rational basis review in the context of equal protection analysis. See *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 833–36. "Equal protection rational basis review is for all material purposes . . . indistinguishable from the analysis in which we would engage pursuant to a due process claim." (Internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 841, 761 A.2d 705 (2000); see also *Hammond* v. *Commissioner of Correction*, supra, 259 Conn. 890. As a result, the petitioner's claim that his due process rights have been violated under the respondent's application of § 18-98d, having been rejected in the equal protection context, also must fail.

3

The petitioner next claims that the respondent violated the separation of powers doctrine. The petitioner

---

[25] The petitioner relies on *Laden* v. *Warden*, 169 Conn. 540, 363 A.2d 1063 (1975), as authority that a fundamental right has been impinged upon. "The refusal to credit the [petitioner] with jail time affects the period of his confinement and directly impinges on his fundamental right of liberty. . . . Hence his lengthened confinement must be justified by a compelling state interest." (Citations omitted.) Id., 544. We believe that *Hammond* controls the issue before us. We also note that in *Laden*, the commissioner of correction disallowed sixty days of credit actually served by the plaintiff as a result of two separate infractions in the correctional facility. Id., 540–41. In the present case, the respondent *has counted and applied* the presentence confinement earned by deducting that amount (261 days) from the sentence imposed on docket 1. Thus, we are not presented with a factual scenario in which days served have not been counted at all.

specifically claims that the respondent's application precludes a sentencing court from imposing a fully concurrent sentence and hence violates the doctrine.[26] We disagree.

As a preliminary matter, we note that "[a] party challenging the constitutionality of a statute bears the heavy burden of establishing its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality and, when interpreting a statute, will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Internal quotation marks omitted.) *State* v. *Gracia*, 51 Conn. App. 4, 9, 719 A.2d 1196 (1998).

"[T]he primary purpose of [the separation of powers] doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof. . . . [Thus] [t]he separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power. . . .

"In the context of challenges to statutes whose constitutional infirmity is claimed to flow from impermissible intrusion upon the judicial power, we have refused to

---

[26] Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. . . ."

find constitutional impropriety in a statute simply because it affects the judicial function . . . . A statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts . . . or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions. . . . In accordance with these principles, a two part inquiry has emerged to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly infringing on the judicial authority. . . . A statute will be held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly functioning of the Superior Court's judicial role." (Citations omitted; internal quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 505–506, 811 A.2d 667 (2002). Nevertheless, we are mindful that "the branches of government frequently overlap, and . . . the doctrine of the separation of powers cannot be applied rigidly . . . ." (Citation omitted; internal quotation marks omitted.) *In re Samantha C.*, 268 Conn. 614, 639, 847 A.2d 883 (2004). The petitioner's argument focuses on the second prong, namely, significant interference with the orderly conduct of the judicial branch. With respect to § 18-98d, the petitioner's separation of powers argument is that the "failure to credit simultaneous presentence confinement against concurrent sentences prevents the court from imposing a fully concurrent sentence." We are not persuaded.

The authority of the judiciary to sentence an individual convicted of a criminal offense is often intertwined with legislative direction. For example, we have noted that "[i]t is well established that the legislature may impose mandatory minimum terms of imprisonment

for certain crimes, and may preclude the probation or suspension of a sentence. . . . A trial court's power to impose a particular sentence is defined by statute, and the constitution does not require that the judiciary be given discretion in sentencing." (Citations omitted; internal quotation marks omitted.) *State* v. *Graham*, 45 Conn. App. 12, 17, 692 A.2d 1306, cert. denied, 241 Conn. 923, 697 A.2d 360 (1997). Additionally, our Supreme Court has stated that "[a]though the judiciary unquestionably has power over criminal sentencing . . . the judiciary does not have exclusive authority in that area." *State* v. *Campbell*, 224 Conn. 168, 178, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993).

In the present case, we cannot conclude that § 18-98d, as applied by the respondent, significantly interferes with the judiciary's role in sentencing. As we have demonstrated, the legislature plays a substantial role, in conjunction with the judiciary, in sentencing those convicted of criminal offenses. Although the sentencing judge cannot aggregate presentence confinement time for multiple dockets, this limitation is not different from a legislative mandate to enforce a mandatory minimum sentence. Similarly, a sentencing judge, within the permissible limits of relevant statutes, has authority to craft and to effectuate a concurrent prison term of whatever length he or she determines appropriate. Accordingly, the petitioner's claim of a violation of the separation of powers doctrine fails.

## II

The petitioner's final claim is that the respondent improperly construed and applied § 53a-38, which resulted in certain constitutional violations. Specifically, the petitioner argues that the respondent improperly (1) credited the time served on a vacated sentence

and (2) failed to apply the statutory good time credit[27] from the vacated seventy-five year sentence. We agree with the petitioner with respect to his first issue, but reject his second claim.

In order to resolve this issue, we must reiterate certain facts. The petitioner was sentenced on docket 3 on February 27, 1985, as follows: On count one, he received twenty-five years; on counts two and three, twenty years each; on counts four and five, ten years each. The sentences on counts one through four were ordered to be served consecutively to each other and to the petitioner's prior sentences on dockets 1 and 2, while the sentence on count five was ordered to be concurrent with the sentences on counts one through four and the sentences on dockets 1 and 2. In sum, the petitioner received a total effective sentence of seventy-five years. Following his successful appeal to our Supreme Court, the petitioner again was convicted on all five counts contained in docket 3. On resentencing, on July 10, 1987, the court imposed the following: On each of the five counts, the petitioner received a twenty year sentence, with the sentences on counts one and three to be served consecutively to each other and the sentences on counts two, four and five to run concurrently with the sentences on counts one and two and with each other. By operation of law, because there was no reference to the sentence imposed on dockets 1 and 2, docket 3 ran concurrently with those sentences.

Following the petitioner's resentencing on docket 3, the respondent calculated his discharge date and utilized the up-front posting method of applying statutory good time credits. The court concluded that the deter-

---

[27] "In contradistinction to jail time, good time is a commutation of a sentence, affecting an inmate's parole and discharge dates, thereby serving an important rehabilitative function by allowing an inmate . . . to earn an earlier release for himself." (Internal quotation marks omitted.) *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 247.

mination of whether the petitioner was entitled to any presentence credit on the vacated sentence, from February 27, 1985, the original sentencing date on docket 3, through February 10, 1987, the date of our Supreme Court's decision, was complicated by the original docket 3 sentence. Because counts one through four of that sentence had been ordered to be served consecutively to the docket 1 and 2 sentences, the original docket 3 sentence would not commence until the docket 1 and 2 sentences expired.[28] Count five of the original sentence, however, ran concurrently with both counts one through four and the docket 1 and 2 sentences. The court noted that by operation of § 53a-38 (b), the ten year sentence on count five merged with the sentences on dockets 1 and 2 and became the controlling sentence, but only until the longer of the sentences under dockets 1 and 2 expired, at which time the seventy-five year consecutive sentence of counts one through four became the controlling sentence.

The court concluded that the petitioner was entitled to receive postconviction credit on count five for the time period from the original docket 3 sentence through the date of the Supreme Court's decision. This credit, however, did not affect the second docket 3 sentence, which was a total effective forty year sentence. The court also concluded that the petitioner was entitled to up-front posting of good conduct credits for the forty year sentence imposed on July 10, 1987. We address each claim in turn.

A

The petitioner first argues that the respondent improperly applied the "relation back" doctrine found in § 53a-38 (c). Specifically, the petitioner contends that the concurrent forty year sentence should have commenced on the date of the original docket 3 sentence

---

[28] See footnote 2.

after it merged with the sentences on dockets 1 and 2. We agree with the petitioner.[29]

In resolving this issue, we must interpret subsections (b) and (c) of § 53a-38. Our review is plenary. The appropriate starting point, of course, is the relevant statutory language. See *Connelly* v. *Commissioner of Correction,* supra, 258 Conn. 403. Section 53a-38 provides in relevant part: "(b) A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) *If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run*; (2) if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term.

"(c) *When a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such person for the same offense or for an offense based on the same act, the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced,* and all time served under or credited against the vacated sentence shall be credited against the new sentence." (Emphasis added.)

In the present case, our Supreme Court reversed the petitioner's original conviction with respect to docket 3 and ordered a new trial. See *State* v. *Whitaker,* supra, 202 Conn. 260. Following retrial and conviction, the

---

[29] The petitioner also argues that the respondent's application of General Statutes § 53a-38 (c) violates his equal protection and due process rights, and the prohibition against double jeopardy and the separation of powers doctrine. Because we agree with the petitioner's argument that the respondent misapplied § 53a-38 (c), we need not discuss those constitutional issues. See *State* v. *Rizzo,* 266 Conn. 171, 235, 833 A.2d 363 (2003) (noting traditional rule of construing statutes, if possible, to avoid risk of running afoul of constitutional prohibitions).

court, on July 10, 1987, resentenced the petitioner to an effective prison term of forty years. This resentence ran concurrently with his sentence on dockets 1 and 2. By operation of § 53a-38 (c), the resentence must be calculated as if it had commenced at the time the vacated sentence commenced, in this case, on February 27, 1985. Additionally, the time served on the original docket 3 sentence must be credited against the resentence.

To calculate the petitioner's sentence, we apply § 53a-38 (b) (1) and conclude that, as of February 27, 1985, the forty year sentence merged with the sentences on dockets 1 and 2, and the new aggregate sentence is controlled by the forty year sentence imposed on docket 3.[30] The time served by the petitioner from February 27, 1985, should be counted as postconviction confinement time.[31] Thus, a rough estimate reveals that the petition-

---

[30] In his brief, the petitioner argued that the court improperly concluded that it lacked jurisdiction to determine whether he was entitled to a presentence confinement credit in dockets 1 and 2. The court had concluded at the time the habeas petition was filed that the petitioner was not in custody on either docket 1 or 2 and, therefore, it lacked jurisdiction with respect to those claims. The petitioner further contends that the respondent should have applied the credit to all three sentences and that the failure to do so improperly increased the commencement of the consecutive portion of the original docket 3 sentence. We conclude that the forty year sentence merged with the sentences on dockets 1 and 2 and ran concurrently with them, becoming the controlling sentence, and thereby eliminated the consecutive portion of the original docket 3 sentence. Accordingly, we need not reach the issue of whether the court lacked jurisdiction to consider whether the petitioner was entitled to have 261 days of presentence credit applied to the consecutive portion of the original docket 3 sentence because the consecutive portion of the docket 3 sentence has been removed from the case and the 261 days properly have been counted against the petitioner's total effective sentence.

[31] We are mindful of our Supreme Court's decisions in *Casey* v. *Commissioner of Correction*, 215 Conn. 695, 577 A.2d 1051 (1990), and *Sutton* v. *Lopes*, 202 Conn. 343, 521 A.2d 147 (1987), both of which held that time spent in custody serving a sentence later vacated was presentence confinement credit. In *Casey*, our Supreme Court stated that General Statutes § 53a-38 (c) "is a general statutory provision which requires that a prisoner be given full credit for time served on a vacated sentence. . . . It does not

er's maximum discharge date to be sometime in February, 2025. We further note that the petitioner is entitled to have all of his presentence good time credit and statutory good time credit that he has earned applied to his total effective sentence. See *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 217. Additionally, any seven day job credits[32] or outstandingly meritorious performance credits[33] also must be applied to his total effective sentence. See *Wright* v. *Commissioner of Correction*, 216 Conn. 220, 221, 578 A.2d 1071 (1990).

## B

The petitioner next claims that the respondent failed to apply the statutory good time credit from the vacated seventy-five year sentence. Specifically, the petitioner argues that the respondent should have applied the statutory good time credit posted on his vacated seventy-five year sentence to reduce the forty year sentence imposed following his retrial. We disagree.

specify what type of credit it refers to. . . . [T]he plain language of § 53a-38 (c) requires only that some form of credit for time served be awarded . . . ." (Citations omitted; internal quotation marks omitted.) *Casey* v. *Commissioner of Correction*, supra, 699. In both *Casey* and *Sutton*, it was more advantageous for the petitioners to have the time served on their vacated sentences treated as presentence confinement credit. In the present case, on the other hand, if the respondent considered the time served on the vacated sentence as presentence confinement credit, General Statutes § 18-98d (a) (1) (B) would prohibit the respondent from applying such time to the petitioner's new sentence. Under § 18-98d (a) (1) (B), presentence confinement time applies only "to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement . . . ." Because the petitioner here was serving a sentence stemming from a separate docket at the same time he was serving time on the vacated sentence, the petitioner was not being held solely because of his inability to obtain bail. Accordingly, in this case, in order for the petitioner to receive full credit for the time he served on the vacated sentence, the respondent should count the time served as postconviction confinement time. See *Steve* v. *Commissioner of Correction*, 39 Conn. App. 455, 463–65, 665 A.2d 168, cert. denied, 235 Conn. 929, 667 A.2d 555 (1995).

[32] See General Statutes § 18-98a.
[33] See General Statutes § 18-98b.

This claim requires us to engage in statutory interpretation; accordingly, the plenary standard of review applies. See *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2005). Our resolution of this issue requires us to harmonize the various statutes involved to produce a reasonable statutory scheme that carries out the apparent intent of the legislature. We begin, therefore, by providing an overview of the relevant statutes.

Section 18-7a (b) provides in relevant part: " [A]ny person sentenced to a term of imprisonment for an offense committed on or after July 1, 1981, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence in the amount of ten days for each month and pro rata for a part of a month of a sentence up to five years, and twelve days for each month and pro rata for a part of a month for the sixth and each subsequent year of a sentence which is more than five years. Misconduct or refusal to obey the rules which have been established for the service of his sentence shall subject the prisoner to the loss of all or any portion of such reduction by the commissioner or his designee."

The second statutory provision pertinent to the petitioner's claim is § 53a-38 (c). Specifically, the petitioner relies on the following: "When a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such person for the same offense . . . *all time* served under or *credited against the vacated sentence shall be credited against the new sentence.*" (Emphasis added.) General Statutes § 53a-38 (c).

To address the petitioner's claim, we must revisit[34] the method of "posting" employed by the respondent

---

[34] The General Assembly eliminated posting by enacting General Statutes § 18-7a (c). *Nichols* v. *Warren*, 209 Conn. 191, 199, 550 A.2d 309 (1988).

at the time the petitioner committed his crimes.[35] In *Seno* v. *Commissioner of Correction*, 219 Conn. 269, 593 A.2d 111 (1991), our Supreme Court stated: "[F]or purposes of administrative efficiency statutory good time was calculated and credited at the outset of a prisoner's sentence on the basis of the sentence imposed by the sentencing court. . . . This method of awarding good time is commonly referred to as posting. . . . For example, when a prisoner sentenced to seven years imprisonment for an offense committed prior to July 1, 1983, was committed to the custody of the respondent, his statutory good time was calculated as follows: for the first sixty months he received ten days per month for a total of 600 days; for the remaining twenty-four months he received twelve days per month for a total of 288 days. Thus, a total of 888 days of statutory good time was credited to his sentence. If the prisoner thereafter exhibited good conduct and obedience to the rules, he was released from custody after 54.4 months of confinement. The Prison and Jail Overcrowding Commission, Prison and Jail Overcrowding: A Report to the Governor and Legislature, January, 1983, p. 70." (Citation omitted; internal quotation marks omitted.) *Seno* v. *Commissioner of Correction*, supra, 275–76.[36]

The petitioner argues that at the outset of his seventy-five year sentence, he received statutory good time credit applied to his sentence. This credit roughly totals

[35] Our Supreme Court has set forth a detailed history of the methods used to calculate and to apply statutory good time credits earned by sentenced prisoners. See *Nichols* v. *Warren*, 209 Conn. 191, 198–201, 550 A.2d 309 (1988).

[36] We note that in *Chung* v. *Commissioner of Correction*, 245 Conn. 423, 434, 717 A.2d 111 (1998), our Supreme Court disavowed certain language contained in *Seno* and held that the enhanced rate of twelve days per month continued in General Statutes § 18-7a (b) did not commence until the prisoner actually had served five years without any regard to any presentence confinement time or presentence good time.

twenty-five years.[37] The petitioner, relying on the language contained in § 53a-38 (c), which requires that all time served under or credited against the vacated sentence be applied to the new sentence, argues that this twenty-five year credit must be applied to the new forty year sentence. We disagree.

It is axiomatic that the law favors rational and sensible statutory construction, and that the courts interpret statutes to avoid bizarre or nonsensical results. See, e.g., *State* v. *Sandoval*, 263 Conn. 524, 553, 821 A.2d 247 (2003); *Commissioner of Transportation* v . *Kahn*, 262 Conn. 257, 275, 811 A.2d 693 (2003); *State* v. *Hall*, 82 Conn. App. 435, 442, 844 A.2d 939 (2004). "*[W]e will not undertake an examination of [a statutory provision] with blinders on regarding what the legislature intended [it] to mean. . . . In interpreting a statute, common sense must be used . . . .* The law favors rational and sensible statutory construction. . . . *The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . .* When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results. . . . *We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute. . . .* When one

---

[37] As a result of our holding in part II A and application of the rule set forth in *Chung* v. *Commissioner of Correction*, 245 Conn. 423, 434, 717 A.2d 111 (1998), it would appear that a small portion of the docket 3 sentence would earn statutory good time credit at the rate of ten days per month before the enhanced rate of twelve days per month. Rather than needlessly complicate this opinion, we will, for the sake of convenience, estimate these statutory good time credits as one third of the total effective sentence.

construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid [it]." (Emphasis added; internal quotation marks omitted.) *Connelly* v. *Commissioner of Correction*, supra, 258 Conn. 407. Thus, we will not limit our review solely to the words used in § 53a-38 (b), but instead use common sense, as well as the legislative history, policy and its relationship to existing legislation and common-law principles pertaining to the same general subject matter. See *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 306, 732 A.2d 144 (1999).

The petitioner requests that we interpret the statute to require the respondent to apply the twenty-five years worth of statutory good time credit[38] from the vacated seventy-five year sentence, thereby reducing the controlling forty year sentence to a mere fifteen years, before any of the other earned credits are applied. We cannot accept this as a result envisioned by the legislature. Such a result would *produce an unwarranted windfall* to the petitioner and frustrate the legislative intent of ensuring that sentenced prisoners serve the proper amount of time. Such a result runs contrary to common sense.

We agree with the United States Court of Appeals for the Eleventh Circuit, which stated that "when a

---

[38] We note that it is well established in our jurisprudence that presentence confinement credits, authorized by General Statutes § 18-98d and its predecessor, General Statutes (Rev. to 1979) § 18-98, are matters of legislative grace. See *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 833, 838; *Hammond* v. *Commissioner of Correction*, supra, 259 Conn. 879; *Johnson* v. *Manson*, 196 Conn. 309, 321 n.12, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); see also *Franklin* v. *Berger*, 211 Conn. 591, 611–12, 560 A.2d 444 (1989) (*Healey, J.*, concurring). If such time, which is time in which the prisoner is actually confined and his liberty deprived, are matters of legislative grace, we conclude that statutory good time credits, which are calculated not on time served but by the length of the sentence, similarly must be matters of legislative grace.

criminal sentence is vacated, it becomes void in its entirety; the sentence—including any enhancements—has been wholly nullified and the slate wiped clean." (Internal quotation marks omitted.) *United States* v. *Stinson*, 97 F.3d 466, 469 (11th Cir. 1996), cert. denied, 519 U.S. 1137, 117 S. Ct. 1007, 136 L. Ed. 2d 885 (1997); see also *United States* v. *Quintieri*, 306 F.3d 1217, 1219 n.6 (2d Cir. 2002), cert. denied sub nom. *Donato* v. *United States*, 539 U.S. 902, 123 S. Ct. 2246, 156 L. Ed. 2d 110 (2003); *Hall* v. *Moore*, 253 F.3d 624, 628 (11th Cir. 2001). In the present case, as a result of our Supreme Court's ordering a new trial, the seventy-five year sentence imposed on docket 3 was void ab initio. This includes not only the seventy-five years owed to the respondent, but any other credits posted in advance with respect to that sentence. The resentencing on docket 3, by operation of § 53a-38, was in effect done nunc pro tunc. The petitioner, of course, is entitled to credit for actual time served on the docket 3 sentence during the time period between his original sentence and his resentencing, as well as any seven day job credits or outstandingly meritorious performance credits earned during this period. It would be absurd, however, to allow the petitioner to reduce his forty year sentence by nearly 60 percent on the basis of *phantom* credits from a vacated sentence that was wiped clean.

The following hypothetical demonstrates the inherent difficulties with the petitioner's interpretation. Had the petitioner been resentenced to a total effective term of twenty years, he would not serve *any time for the crimes contained in docket 3*. Instead, on the basis of a sentence that was vacated and, thus, never really existed, he would be given statutory good time credits on a sentence that never existed. Furthermore, if the sentencing court attempted to account for statutory good time credits and increased the petitioner's sentence, it could appear that he was being subjected to

vindictive sentencing. Thus, for all of the foregoing reasons, we disagree with the petitioner's interpretation.

We interpret the relevant statutory provisions to require the respondent, following resentencing, to reapply the statutory good time calculation on the basis of the controlling forty year sentence. Such an interpretation comports with the constitutional mandate of *North Carolina* v. *Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), which requires that a petitioner be given full credit for time served on a vacated sentence. The petitioner must be afforded roughly one third of forty years, or approximately thirteen and one-third years, of statutory good time posted to his sentence. Accordingly, as we determined his maximum release date of February, 2025, after applying the statutory good time credit to which he is entitled, we conclude that, absent any other adjustments for credits earned or forfeited, the petitioner's release date is estimated roughly as November, 2011.

We reverse in part the judgment of the habeas court and remand the case to the habeas court to determine the petitioner's release date in accordance with this opinion. The judgment is otherwise affirmed.

In this opinion the other judges concurred.